Roberts H. Downs, demandante, *v.* Santiago Porrata Doria, Fiscal del Tribunal Superior de Puerto Rico, Sala de Arecibo, recurrido.

Número 472.

*Sometido:* 1 de junio de 1953. *Resuelto:* 25 de mayo de 1954.

*Santos P. Amadeo* y *Antonio Guzmán Juarbe,* abogados del peticionario; *Honorable Secretario de Justicia, José Trías Monge* y *A. Torres Braschi, Procurador Auxiliar,* abogados del demandante.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del tribunal.

El día 29 de noviembre de 1951, el señor Fiscal del anterior Tribunal de Distrito de Puerto Rico, Sección de Arecibo, presentó una acusación contra el señor Roberts H. Downs, Miembro de las Fuerzas Armadas de los Estados Unidos de América, por infracciones a los arts. 7 y 29 de la Ley núm. 17 para Reglamentar la Posesión, Portación, Venta y uso de Armas en Puerto Rico, aprobada el 19 de enero de 1951. Al ser arrestado se le ocupó una motocicleta de su propiedad, presuntivamente utilizada para la transportación ilegal del arma. El demandante fué declarado culpable de las infracciones de ley que se le imputaban y sentenciado a cumplir seis meses de cárcel en cada uno de los casos.

El día 17 de septiembre de 1952, el Honorable Gobernador de Puerto Rico, le concedió al demandante "un indulto total, pleno e incondicional por los delitos por que fué convicto

y por cualquier otro término de prisión que falte por expirar bajo las mencionadas sentencias, así como por cualesquiera otras penas en que hubiere incurrido de acuerdo con la ley, y por la presente le restituyo todos los derechos civiles y prerrogativas que anteriormente le pertenecían y de los cuales fué privado por las susodichas convicciones y sentencias."

Después de recibir este indulto, el demandante solicitó del señor Fiscal del Tribunal Superior de Puerto Rico, Sala de Arecibo, sucesor del anterior Tribunal de Distrito de Puerto Rico, Sección de Arecibo, la devolución de la motocicleta ocupada, negándose dicho funcionario a tal devolución. El presente recurso se presenta para que dicho funcionario sea obligado por este tribunal a entregar al demandante la motocicleta ocupada.

La única cuestión envuelta en este caso es determinar el efecto de un indulto total, pleno e incondicional sobre cualesquiera propiedades ocupadas o confiscadas, por medio de las cuales se haya cometido el delito condonado.

La prerrogativa real de la corona inglesa de conceder amnistías, indultos, restituciones de bienes y otras valías o condonaciones a los súbditos de la corona, se transformó dentro del derecho constitucional norteamericano, en la facultad del Presidente de los Estados Unidos para "suspender la ejecución de sentencias o conceder indultos por delitos contra los Estados Unidos, excepto en casos de residencia": —Art. II, Sec. 2 de la Constitución de los Estados Unidos de América.

La Sec. 17 de la Ley Orgánica de Puerto Rico de 12 de abril de 1900 le confirió al Gobernador de Puerto Rico la facultad de conferir indultos y suspensiones de sentencias, remitir multas y confiscaciones por delitos contra las leyes de Puerto Rico y diferir las ejecuciones de sentencias por delitos contra las leyes de los Estados Unidos de América, hasta tanto pudiera conocerse la decisión del Presidente de

los Estados Unidos. Igual disposición contenía el Art. 12 de la Ley Orgánica de Puerto Rico de 2 de marzo de 1917.

Cuando se reune la Convención Constituyente de Puerto Rico para redactar la Constitución del Estado Libre Asociado de Puerto Rico, el informe de la Comisión de la Rama Ejecutiva, contiene sustancialmente los mismos principios de las dos leyes orgánicas anteriores. La discusión de la Convención Constituyente que se lleva a cabo el 9 de enero de 1952, sobre la gracia ejecutiva bajo estudio, sólo toma algunos minutos. Vide: Diario de Sesiones de la Convención Constituyente de Puerto Rico, pág. 659. Dichos principios quedaron consagrados en el Art. IV, Sec. 4 de la Constitución del Estado Libre Asociado que confiere al Gobernador de Puerto Rico la facultad de "suspender la ejecución de sentencias en casos criminales, conceder indultos, conmutar penas y *condonar total o parcialmente multas y confiscaciones por delitos cometidos* en violación de las leyes de Puerto Rico", menos en procesos de residencia.

La anatomía jurídica de este artículo nos lleva de la mano a concluir que estamos frente a uno de los pocos poderes del monarca que reconoce la democracia. Por analogía, el escueto poder constitucional conferido por la Sec. 2 del Artículo II de la Constitución al Presidente de los Estados Unidos de América, concediéndole "poder para suspender la ejecución de sentencias o conceder indultos por crímenes contra los Estados Unidos, excepto en casos de residencia", fué enriquecido por la significación tradicional de la prerrogativa real de la corona inglesa, ya que, "ejercida desde tiempo inmemorial por el ejecutivo de esa nación cuyo idioma es nuestro idioma y con cuyas instituciones judiciales las nuestras guardan una estrecha semejanza, adoptamos sus principios en cuanto al modo (*operation*) y efecto de un indulto e indagaremos en sus textos aquellas reglas que establecen la manera (*manner*) en que la gracia debe ser usada por la persona a quien le incumba": *The United States* v. *Wilson*, 7 Peters 149, 8 L. ed. 640, (*Marshall*), (1830), cita pre-

cisa a la pág. 160 (*Peters*), final de pág. 643 y principio de pág. 644 L. ed.; véase además *Pollock* v. *Bridgeport Steamboat Co.* 114 U. S. 411, 29 L. ed. 147, (Harlan), (1885), cita precisa a la pág. 417 U. S. 149 L. ed.

Habiéndose adoptado la anterior política judicial de equiparar el poder de indulto presidencial con la prerrogativa real de la corona, en todo aquello que no resultara incompatible con el numen (*genius*) de la nueva República, resultan comprendidos dentro de la gracia ejecutiva: (1) el indulto propiamente dicho, en sus dos modalidades de incondicional o condicionado, (2) las condonaciones parciales de los términos de una sentencia, (3) las conmutaciones de penas y (4) las remisiones de multas, penalidades y confiscaciones.

La amnistía decretada por la Proclama del Presidente Johnson de 25 de diciembre de 1868, después de la guerra civil norteamericana, le permitió a la Corte Suprema de Estados Unidos desarrollar una jurisprudencia, que aunque ya clásica, ha permanecido inalterable en sus contenidos doctrinales, y que podría resumirse de la siguiente manera: el poder de indulto del ejecutivo es un poder absoluto que no puede ser interrumpido, abolido o limitado por ninguna actuación legislativa o judicial, aunque resulte incidental al deber ejecutivo de velar por el fiel cumplimiento de las leyes de la República; aunque se trata de un poder absoluto, en cuanto al derecho del ejecutivo a ejercitarlo cuando así lo desee, siguiendo los precedentes de la prerrogativa real de la corona inglesa, no resulta un poder exclusivo, que no pueda ser ejercitado por ninguna otra persona que no sea el ejecutivo mismo; que dicho poder puede ser ejercitado, en virtud de autorización legislativa, y en todo lo referente a remisión de multas, penalidades y confiscaciones, por otros funcionarios del estado, tales como el Secretario del Tesoro, o el Colector de Aduanas; que tal poder se extiende en virtud de la implicación autorizada por la raíz histórica de la prerrogativa real, al indulto (*pardon*), a las condonaciones parciales de sentencias en procesos criminales, a las conmutaciones de

penas y a las remisiones de multas, penalidades y confisca-
ciones; que las únicas limitaciones que tiene este poder, en
cuanto a suspensiones de sentencia, condonación de sentencias
y conmutación de penas, es cuando las mismas se refieran a
crímenes contra los Estados Unidos cometidos por súbditos
de otros países, en cuyo caso el indulto no evita la deporta-
ción, y en cuanto a remisiones de multas, penalidades y con-
fiscaciones, que la propiedad o dineros, no hayan pasado a
manos de terceras personas mediante declaración judicial, ob-
tenida en un procedimiento de confiscación autorizado por
ley, o hayan ingresado en el tesoro nacional, en cuyo segundo
caso se necesitaría una ley del Congreso y no se trate de una
multa impuesta dentro de un desacato civil; que en cuanto
a remisiones de multas, penalidades y confiscaciones, cuando
la propiedad o dinero se encuentra todavía bajo el control de
los organismos ejecutivos o judiciales, sin haber ingresado
al fondo común del tesoro nacional, el indulto concede al in-
dultado la restitución de cualquiera propiedad que se hubiere
utilizado para ejecutar el delito o cualesquiera dineros paga-
dos por multa, a menos que no se hubiere negado tal restitu-
ción como una condición del indulto: *Ex Parte A. H. Garland*
4 Wallace 333, 18 L. ed. 366, (Field), (1867), cita precisa
a la pág. 380 (Wall), final de pág. 370 y principio de pág.
371 L. ed; *Armstrong's Foundry* v. *United States* 6 Wallace
766, 18 L. ed. 882, (Chase), (1868), cita precisa a la pág.
770 L. ed.; *Osborn* v. *United States* 91 U. S. 474, 23 L. ed.
388 (Field) (1876), cita precisa a la pág. 390; *Knote* v.
*United States*, 95 U. S. 149, 24 L. ed. 442, (Field) (1877),
cita precisa a las págs. 154 y 155 U. S., 443 y 444 L. ed.;
*Pollock* v. *Bridgeport Steamboat Co.*, supra, (Harlan),
(1885), cita precisa a la pág. 414 U. S., 148 L. ed.; *Illinois
Central Railroad Co.* v. *Bosworth*, 133 U. S. 92, 33 L. ed.
550 (Bradley), (1890), cita precisa a la pág. 105 U. S., 555
L. ed. Véase además *Biddle* v. *Perovich* 274 U. S. 480, 71
L. ed. 1161, (Holmes), (1927), cita precisa a las págs. 486
y 487 U. S., 1163 y 1164 L. ed.; *United States* v. *Wright*

56 F.Supp. 489 (Lindley), (1944), cita precisa a la pág. 492; *Lupo* v. *Zerbst* 92 F.2d 362, (Holmes), (1937), cita precisa a la pág. 364, (certiorari denegado en 82 L. ed. 1108); *Solesbee* v. *Balkcom* 339 U. S. 9, 94 L. ed. 604, (Black), (Frankfurter, disidente), (1950), cita precisa a la pág. 12 U. S., 607 L. ed.; *United States* v. *Tomoya Kawakita* 108 F. Supp. 627, (Mathes), (1952), cita precisa a la pág. 632; 23 Am. Jur. 619 (sec. 21) y 643 (sec. 53); 39 Am. Jur. 533, (sec. 26).

Basta examinar el Artículo IV, Sec. 2 de la Constitución del Estado Libre Asociado de Puerto Rico para darnos cuenta que todas y cada una de las palabras que contiene dicho artículo son los conceptos tradicionales esclarecidos por la jurisprudencia clásica. Por esto, en cuanto a la confiscación de propiedad utilizada como un instrumento o medio para la comisión de un delito, proscrito por las leyes penales de Puerto Rico, establecemos como regla local, que cualquier indulto incondicional del Gobernador de Puerto Rico implica la obligación de cualesquier funcionarios ejecutivos o judiciales a devolver la cosa confiscada, a menos que en virtud de un procedimiento de confiscación, establecido por la misma ley donde se ordena tal confiscación, la cosa confiscada haya pasado legalmente a manos de terceras personas, o cuando vendida la cosa de acuerdo con el procedimiento fijado por ley y reducida a dinero, tal dinero haya ingresado en el fondo común del tesoro de acuerdo con la ley y los reglamentos administrativos aplicables al caso. Si el dinero no ha ingresado en el fondo común del tesoro, tiene que ser devuelto al indultado, lo mismo cuando se trate de una multa o una penalidad que cuando se trate del producido de una venta, por confiscación, a menos que el indulto no se condicione a tales efectos.

El demandado pretende, como su única defensa en este caso, que apliquemos al caso del indulto incondicional, en todo lo referente a confiscación de propiedades, la teoría de la culpabilidad sobre la cosa, y que declaremos que siendo

el procedimiento de confiscación uno *in rem*, dirigido contra el vehículo mismo y no contra su dueño, cualquier indulto concedido al dueño no alcanza la cosa. · Aunque el art. 37 de la Ley de Armas de Puerto Rico, según quedó enmendado por la Ley núm. 397 de 10 de mayo de 1951 ( (1) pág. 993), · provee un procedimiento de confiscación cuando un funcionario del orden público sorprendiere a cualquiera persona en el acto de transportar en cualesquier vehículo o montura un arma en violación de la ley, es indudable que la disposición legislativa no puede en forma alguna limitar, abolir o regular el poder de indulto del ejecutivo, dentro del cual se encuentra comprendida la autoridad para remitir multas, penalidades y confiscaciones.

La algunas veces útil ficción que la culpabilidad puede recaer sobre la cosa que sirve de instrumento para la comisión de un delito, haciendo abstracción de la voluntad criminal que la dirige, no tiene un valor absoluto del cual deba hacerse depender la resolución de este caso. La naturaleza *in rem* o *in personam* de un procedimiento depende en cuanto a su valoridad de lo que persiga el estatuto. Algunas veces una ley, como sucede con el art. 34 de la Ley de Armas de Puerto Rico, según quedó enmendado por la Ley núm. 129 de 22 de abril de 1952 ( (1)· pág. ¨253), declara como estorbo público ciertos instrumentos, que por su extrema peligrosidad para el estado, tan pronto son ocupados, quedan ministerialmente confiscados, para su posible uso legal por el estado o para su destrucción definitiva. Otras veces, como sucede con el art. 37 de la misma ley, según quedó enmendado por ·la Ley núm. 397 de 10 de mayo de 1951, se ordena una simple incautación de ciertos instrumentos, que a pesar de ser utilizables para fines lícitos, se convierten en instrumentos ilícitos por el uso que le ha dado el delincuente. En el primer caso, la confiscación es automática y el título pasa directamente al estado, y la declaración judicial de culpabilidad acarrea automáticamente el decomiso de la cosa, sin tomar en consideración ningunos otros intereses que no sean los del

estado mismo. En el segundo caso, la confiscación tiene que hacerse mediante declaración judicial, después que se pruebe, (1) el uso ilegal de una cosa y (2) el conocimiento de los interesados de dicho uso ilegal. El título de propiedad no pasa al estado ni a la persona que lo adquiera en la venta judicial, hasta que no medie declaración judicial y el procedimiento de subasta pública se haya cumplido. No es la naturaleza de la acción, sino el verdadero propósito del estatuto, lo que nos debe guiar en una situación como ésta.

No estamos en este caso frente a la cosa de extrema peligrosidad que haya sido legislativamente declarada estorbo público. En este caso nos inclinamos a pensar con el demandado que el indulto no cubriría la remisión de propiedad que pudiera resultar lesiva para el estado. Pero cuando se trata, como se trata en este caso, de una propiedad útil, aprovechable para fines lícitos, como suelen ser los vehículos y monturas, donde incluso la ley reconoce el derecho de las personas inocentes a reclamar la cosa, el efecto práctico del indulto es, que al borrarse todo vestigio de culpabilidad de la persona, la propiedad confiscada se convierte automáticamente en una propiedad inocente (*innocent property*) que puede revertir a su dueño, puesto que es la culpa del dueño la que la convierte en un instrumento o medio ilícito para la comisión de un delito. De todos modos, siempre el ejecutivo tendría oportunidad de consignar en el propio indulto, como una condición a ser cumplida por el indultado, la disposición de cualquiera propiedad conectada con la comisión del delito.

*Debe declararse sin lugar la "Moción para desestimar o en la alternativa para que se dicte sentencia sumaria a favor del demandado", presentada por el demandado en este caso.*

Los Jueces Presidente Sr. Snyder y Asociado Sr. Sifre concurren en el resultado.