

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Cooperativa de Seguros Multiples de Puerto Rico<br><br>    Apelado<br><br>          v.<br><br>Estado Libre Asociado de Puerto Rico, Et al.<br><br>    Apelante | Apelación<br><br>2011 TSPR 5<br><br>180 DPR \_\_\_\_ |

Número del Caso: AC-2009-97

Fecha: 14 de enero de 2011

Tribunal de Apelaciones:

      Región Judicial de Ponce Panel VII

Juez Ponente:
           Hon. Sixto Hernández Serrano

Oficina del Procurador General

        Lcda. Rosa Elena Pérez Agosto
        Procuradora General Auxiliar

Abogado de la Parte Apelada:

        Lcdo. Armando Franceschi Figueroa

Materia: Impugnación de Confiscación

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

JB

| | |
|---|---|
| Cooperativa de Seguros Múltiples de Puerto Rico<br>Apelado | Apelación |
| v. | AC-2009-97 |
| Estado Libre Asociado de Puerto Rico, *et al.*<br>Apelante | |

Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA

En San Juan, Puerto Rico, a 14 de enero de 2011.

¿Qué efecto tiene la muerte de una persona imputada de delito en el procedimiento de confiscación civil de la propiedad que alegadamente se utilizó al cometer el acto delictivo? En este caso, veremos si la extinción de la causa penal producto de la muerte de la persona imputada tiene como consecuencia la extinción del proceso de confiscación de la propiedad ocupada y su consiguiente devolución.

I.

Los hechos del caso de autos son sencillos. El 8 de junio de 2004, el Estado Libre Asociado (en adelante "Estado" o "ELA") ocupó un vehículo

marca Toyota modelo Sequoia del año 2002, con número de tablilla ENK-932. El ELA alegó que el vehículo fue utilizado durante la comisión de varios delitos, en violación a los artículos 4.01 y 4.04 de la Ley de Sustancias Controladas,[1] entre otros. Como consecuencia, el Estado confiscó el automóvil.

El 17 de junio de 2004, la confiscación del vehículo fue notificada a "Reliable Finances de Puerto Rico", entidad financiera en cuyo favor existía el correspondiente gravamen o deuda por concepto de financiamiento. Dicha notificación, además, estableció la tasación del vehículo en $33,950. El 30 de junio de 2004, Reliable y la aquí apelada Cooperativa de Seguros Múltiples (en adelante "Cooperativa") presentaron oportunamente una demanda de impugnación de la confiscación ante el Tribunal de Primera Instancia. La Cooperativa es la entidad aseguradora del vehículo confiscado con cubierta para el riesgo o pérdida por confiscación.

En su demanda de impugnación, Reliable y la Cooperativa alegaron que el vehículo confiscado nunca fue utilizado en violación a las disposiciones de la Ley de Sustancias Controladas y cuestionaron las bases para la incautación del vehículo, así como su tasación. Además, alegaron que la confiscación era nula porque no se habían cumplido los requisitos procesales de la Ley número 93 de 13 de julio de

---

[1] 24 L.P.R.A. §§ 2401 et seq.

1988, según enmendada, conocida como la Ley Uniforme de Confiscaciones.[2]

Posteriormente, el Ministerio Público sometió cargos contra el señor Omel Serrano Rivera por infracciones a los citados artículos 4.01 y 4.04 de la Ley de Sustancias Controladas, *supra,* es decir, por los mismos hechos que propiciaron la confiscación del vehículo. Sin embargo, el señor Serrano Rivera murió antes de que comenzara el juicio, por lo cual el Tribunal de Primera Instancia ordenó el sobreseimiento y archivo del caso, al amparo del artículo 97 del Código Penal de 2004.[3]

Al conocer del fallecimiento del señor Serrano Rivera y el sobreseimiento y archivo de la causa criminal en su contra, la parte apelada solicitó que se declarara con lugar su demanda de impugnación como cuestión de derecho y se procediera a la devolución del vehículo. El ELA se opuso, alegando que el archivo de la causa criminal no se podía imputar al Estado y que, al ser la confiscación una acción *in rem*, se podía continuar con el proceso de confiscación contra el bien ocupado, independientemente del archivo de la causa criminal contra el alegado autor del delito. Además, planteó que el archivo en el caso criminal no fue en los méritos, por lo cual en la acción de

---

[2] 34 L.P.R.A. §§ 1723 *et seq*.

[3] 33 L.P.R.A. § 4729.

impugnación no se puede aplicar la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia.

El 25 de noviembre de 2008, el Tribunal de Primera Instancia declaró sin lugar la moción de sentencia sumaria presentada por la parte apelada. El foro de instancia basó su denegatoria en que "[a]ún cuando la causa criminal se extinguió por la muerte del imputado, resulta ser una razón totalmente ajena a los méritos de la acusación".[4] El 15 de diciembre de 2008 se celebró la vista en su fondo. El Tribunal de Primera Instancia se reservó el fallo, lo cual motivó a la Cooperativa a recurrir ante el Tribunal de Apelaciones mediante recurso de *certiorari* que fue declarado académico al dictarse el 27 de enero de 2009 una sentencia declarando sin lugar la demanda de impugnación de confiscación. Es de esta sentencia que Reliable y la Cooperativa interpusieron un recurso de apelación ante el Tribunal de Apelaciones.

Por su parte, el Tribunal de Apelaciones concluyó que, como el procedimiento criminal contra el señor Serrano Rivera fue archivado conforme a lo dispuesto por la Regla 247(a) de Procedimiento Criminal,[5] por razón de la muerte del imputado, y dado el carácter punitivo de la confiscación, la incautación del vehículo no debía prevalecer, aún cuando no se produjo una determinación en

---

[4] Sentencia del Tribunal de Apelaciones del 21 de agosto de 2009, p. 4.

[5] 34 L.P.R.A. Ap. II R. 247(a).

los méritos que favoreciera al acusado. El Tribunal de Apelaciones razonó que cuando "el procedimiento criminal no culmina en un resultado favorable para el Estado, la confiscación no puede prevalecer".[6] El foro intermedio resolvió que, al amparo del artículo 97 del Código Penal, *supra*, se había extinguido la causa penal y, por consiguiente, no se sostenía la confiscación del vehículo. Por tanto, revocó al Tribunal de Primera Instancia y ordenó que se declarara con lugar la demanda presentada.[7]

Inconforme con esta determinación, el Estado nos solicita que revoquemos al Tribunal de Apelaciones. En síntesis, alega que la devolución del vehículo incautado no procede automáticamente puesto que el archivo en el caso criminal no fue producto de una determinación en los méritos y ni de una conducta adjudicable al Estado. El ELA argumenta que la naturaleza civil e independiente del procedimiento de confiscación *in rem* sobrevive la extinción de la acción penal producto de la muerte del alegado autor de la conducta criminal que sirve de base para la confiscación. Ante un evidente conflicto entre paneles del Tribunal de Apelaciones,[8] acogimos el recurso como una

---

[6] Sentencia del Tribunal de Apelaciones, p. 7.

[7] La decisión del Tribunal de Apelaciones fue en votación divida dos a uno. El Juez López Feliciano emitió un voto disidente.

[8] En el caso KLAN 06-01084, un panel del Tribunal de Apelaciones sostuvo que la muerte del imputado antes de que se celebrara el juicio en su contra no anulaba la confiscación del vehículo que había sido ocupado. El foro

apelación. Con el beneficio de los alegatos de las partes, estamos en posición de resolver.

II.

A.

La Ley Uniforme de Confiscaciones autoriza al Estado a ocupar y hacer suya toda propiedad que sea utilizada en la comisión de ciertos delitos graves y menos graves, incluyendo violaciones a la Ley de Sustancias Controladas, *supra*.[9] Se trata de una excepción al mandato constitucional que prohíbe la toma de propiedad privada para fines públicos sin justa compensación.[10] La aprobación de esta ley en 1988 fue parte del proceso que llevó a cabo el Estado a través de varias décadas para uniformar el mecanismo de confiscación de propiedades previamente esparcido en diferentes leyes especiales.

---

apelativo basó su decisión en que, dada la naturaleza civil de la confiscación, la ausencia de absolución en los méritos en la causa penal y la independencia entre los dos procedimientos, nada impide la continuación del proceso confiscatorio. A semejante conclusión se llegó en el caso KLAN 05-00578.

[9] 34 L.P.R.A. § 1723(a), Suárez v. E.L.A., 162 D.P.R. 43, 51 (2004). Esta ley actualizó la Ley Uniforme de Confiscaciones de Vehículos, Bestias y Embarcaciones de 1960 y amplió la autoridad del Pueblo de Puerto Rico para confiscar la propiedad que fuera utilizada con fines ilegales. Suárez v. E.L.A., *supra*, p. 53.

[10] Sección 9, artículo II, Constitución de Puerto Rico. No obstante, está sujeta al mandato constitucional de que nadie será privado de su propiedad sin el debido proceso de ley. Const. P.R., *supra*, Art. II, sec. 9; General Motors Acceptance v. Brañuela, 61 D.P.R. 725, 727 (1943).

El propósito de la Ley está plasmado con claridad en su Exposición de Motivos: "La confiscación de los bienes que propician la comisión de un delito puede ser un elemento disuasivo para el delincuente que por temor a exponerse al peligro de perder su propiedad limita su actividad delictiva o no le resulta tan fácil su realización".[11] Además, se busca evitar que la propiedad pueda ser utilizada para futuras actividades delictivas.[12] Es decir, se pretende desincentivar la conducta criminal imponiendo un castigo adicional a la posible privación de la libertad tras un encausamiento penal, en este caso, la pérdida de la propiedad. Se trata de un esquema estatutario punitivo que, si bien en su forma procesal es civil, se asemeja más, por su naturaleza, al campo criminal. Por un lado, se vincula el proceso de confiscación con la conducta delictiva base que autoriza su ejecución de manera que, en su objetivo disuasivo y punitivo, constituya una herramienta adicional en los intentos del Estado por atender la problemática social de la criminalidad. Por otro lado, se separa procesalmente la confiscación de la acción penal, moviéndose "la persecución del criminal […] de la esfera penal a la del proceso civil para incautarse de los bienes instrumentales del delito o resultantes de la operación o

---

[11] Leyes de Puerto Rico 1988, p. 409.

[12] Exposición de Motivos, Ley 93 de 13 de julio de 1988, Leyes de Puerto Rico 1988, p. 409.

empresa criminal".[13] Así, la confiscación es un mecanismo en la lucha contra el crimen y "actúa como una *sanción penal adicional* contra el criminal".[14] Por tanto, aunque el proceso mantiene su forma civil, su objetivo sigue siendo punitivo.[15]

El proceso de confiscación tiene dos modalidades. La primera, de naturaleza puramente penal, es parte del proceso criminal dirigido contra el alegado autor del delito base que autoriza la confiscación. En ese proceso criminal, de encontrarse culpable a la persona imputada, la sentencia impondrá como sanción la confiscación del bien incautado. A esta modalidad de confiscación se le conoce como *in personam*. La segunda se define como un proceso civil en el que se va directamente contra la cosa a ser confiscada, separándolo procesalmente del encausamiento criminal contra el presunto autor del delito. A esta modalidad de confiscación se le conoce como *in rem*. Esta es la modalidad recogida en la Ley Uniforme de Confiscaciones, *supra*.

No obstante esta distinción, consistentemente hemos manifestado que el proceso de confiscación en la modalidad

---

[13] Manuel J. Vera Vera, <u>El posterior adquirente de buena fe y la confiscación de vehículos</u>, 68 Revista del Colegio de Abogados de Puerto Rico, Número 1, Enero-Marzo, 2007, p. 1.

[14] *Id*., p. 24 (Énfasis suplido).

[15] <u>Ford Motor Credit v. E.L.A.</u>, 2008 T.S.P.R. 137, 174 D.P.R. ___ (2008).

*in rem* tiene una marcada naturaleza criminal.[16] De igual forma, hemos determinado que la manera en que se aplica la sanción, el procedimiento que se utiliza y las defensas permitidas reflejan su propósito punitivo.[17] En cuanto a esto, aplica el principio reiterado de que "[n]o es la naturaleza de la acción, sino el verdadero propósito del estatuto, lo que nos debe guiar".[18]

Lo anterior es cónsono con los pronunciamientos del Tribunal Supremo de los Estados Unidos. En <u>Plymouth Sedan v. Pennsylvania</u>, 380 U.S. 693 (1965), dicho Tribunal aplicó las garantías constitucionales contra los registros irrazonables en casos criminales a un proceso de confiscación civil. En ese caso, el Tribunal Supremo federal reconoció que aunque la confiscación tiene forma civil no deja de ser un proceso esencialmente criminal:

> [P]roceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offenses committed by him, though they may be civil in form, are in their nature criminal…[and] though technically a civil proceeding, [it] is in substance and effect a criminal one…[S]uits for penalties and forfeitures incurred by the commission of offenses against the law, are of this quasi-criminal nature.[19]

---

[16] <u>Centeno Rodríguez v. E.L.A.</u>, 170 D.P.R. 907, 913 (2007), <u>Carlo v. Srio. de Justicia</u>, 107 D.PR. 356, 362 (1978).

[17] <u>Del Toro Lugo v. E.L.A.</u>, 136 D.P.R. 973, 986-987 (1994).

[18] <u>Downs v. Porrata</u>, 76 D.P.R. 611, 619 (1954).

[19] <u>Plymouth Sedan v. Pennsylvania</u>, *supra*, p. 697, citando a <u>Boyd v. United States</u>, 116 U.S. 616, 633 (1886).

El Tribunal Supremo federal también manifestó que, aunque se denomine como civil y se considere que es independiente a la causa criminal, el objetivo de este tipo de confiscación, al igual que el de un proceso criminal, es penalizar por la comisión de un delito.[20]

B.

En el proceso de confiscación *in rem*, se permite al Estado ir directamente contra la propiedad como parte de una ficción jurídica que considera que a la cosa, como medio o producto del delito, se le puede fijar responsabilidad independientemente del autor del delito.[21] En Carlo v. Srio. de Justicia, *supra*, p. 360, explicamos que el proceso *in rem* tiene sus raíces en un momento de la historia "producto de la legítima preocupación del Estado con la práctica de la piratería y el contrabando a principios del siglo XIX [y ha sido] atemperada en el decurso del tiempo por el recio surgimiento y difusión de las garantías de la Quinta Enmienda de la Constitución de

---

[20] *Íd.*, p. 700. El razonamiento de este caso fue adoptado en E.L.A. v. Tribunal Superior, 94 D.P.R. 717, 721 (1967). En su Opinión Disidente, el Juez Becerra quiso ir más allá y manifestó que desde Plymouth Sedan, *supra*, "no creo que puede seguir prevaleciendo aquí aquellos criterios que consideraron la naturaleza de la confiscación como un procedimiento meramente civil dirigido a una cosa. El caso citado afirma claramente la naturaleza criminal de la confiscación y que impone castigo por la comisión de delito". *Íd.*, p. 724.

[21] Srio. de Justicia v. Tribunal Superior, 89 D.P.R. 574, 578 (1963).

los Estados Unidos contra más de un juicio por el mismo delito, la autoincriminación, la falta de debido proceso y la toma de propiedad privada para uso público sin justa compensación".[22]

Esa ficción jurídica tiene como objetivo justificar un proceso civil en el que se pretende confiscar una propiedad utilizada para la comisión de un delito, o producto de éste, *cuando el dueño de la propiedad a ser confiscada reclama su propia inocencia y argumenta que no se le puede privar de su propiedad por la conducta criminal de un tercero*. De esta situación surge la doctrina del tercero inocente, que es la principal generadora de jurisprudencia sobre el proceso *in rem* de confiscación. Consistentemente hemos resuelto que la ficción jurídica de la responsabilidad atribuida a la cosa derrota las alegaciones de inocencia del dueño si éste consintió o de otra manera entregó voluntariamente la posesión del bien a la persona que incurrió en la conducta criminal.[23] Como correctamente señala Vera Vera, "[l]a ficción legal persigue,

---

[22] En este caso, también hicimos referencia a las garantías de nuestra Constitución sobre los mismos asuntos.

[23] *Véase* General Accident Ins. Co. v. E.L.A., 137 D.P.R. 466 (1994), Del Toro Lugo v. E.L.A., 136 D.P.R. 973, 982 (1994), Alvenre Corp. v. Srio. de Justicia, 130 D.P.R. 760 (1992, Opinión de Conformidad del Juez Fuster Berlingeri), E.L.A. v. Tribunal Superior, 94 D.P.R. 717, 721 (1967), Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964), Estado Libre Asociado v. Tribl. Superior, 76 D.P.R. 842 (1954), Metro Taxicabs v. Tesorero, 173 D.P.R. 171 (1952), Sánchez v. Tesorero de P.R., 72 D.P.R. 133, 136 (1951), General Motors Acceptance v. Brañuela, 61 D.P.R. 725 (1943).

punitivamente, al dueño de la cosa, bajo el supuesto de que ha tenido un comportamiento culpable o susceptible de reproche, al permitir o no supervisar adecuadamente el uso de la cosa para la comisión o como instrumento de un delito".[24] No obstante, ello no significa que derrota la inocencia de la persona a quién se le imputa el delito que sirve de base para justificar la confiscación.

Como consecuencia, la ficción jurídica de responsabilidad *in rem* ha sido severamente criticada. En Carlo v. Srio. de Justicia, *supra*, pp. 361-362, manifestamos que:

> La jurisprudencia de Puerto Rico ha seguido la misma ruta de cautelosa atenuación de severidad en la aplicación del principio que Blackstone llamó superstición heredada de los días ciegos del feudalismo, hacia la vindicación del derecho de la persona inocente de la actividad criminal que da lugar a la confiscación.

Estas expresiones recogen el desarrollo del tema en la jurisprudencia del Tribunal Supremo federal, específicamente el comentario de ese Tribunal en United States v. United States Coin & Currency, 401 U.S. 715 (1970): "Even Blackstone, who is not known as a biting critic of the English legal tradition, condemned the seizure of the property of the innocent as based upon 'superstition' inherited from the 'blind days' of

---

[24] Vera Vera, *Op. Cit.*, p. 11.

feudalism".[25] En este caso el Tribunal Supremo federal comenta, además, la peculiaridad de que se trata a una 'cosa' como si fuese actora de delito.[26]

En cuanto a la relación entre la cosa y la conducta delictiva base que justifica la confiscación, hemos resuelto que "[c]omo toda ley civil relacionada indirectamente con la comisión de un delito, su ánimo correctivo *parte del supuesto de una persona culpable de su infracción*".[27] Igualmente, hemos reconocido que su objetivo es castigar por la comisión de una ofensa contra la ley.[28] La conexión entre el proceso de confiscación *in rem*, por un lado, y la conducta criminal base y el autor de dicha conducta criminal por el otro es evidente: "El derecho del Estado de tomar posesión de la cosa surge del mal uso que se le haya dado a ésta".[29] Es decir, no obstante la ficción jurídica que permite ir directamente contra la cosa como si ésta fuera responsable de la conducta criminal, hemos reconocido que, al fin y al cabo, *alguien* tiene que utilizar la cosa delictivamente. También hemos reafirmado el "vínculo necesario en todo caso de confiscación entre la

---

[25] Citando a I W. Blackstone, Commentaries, c. 8, *300.

[26] "More remarkable, the Government's complaint charges the *money* with the commission of an actionable wrong". United States v. United States Coin & Currency, *supra*, p. 718 (Énfasis en original).

[27] Meléndez v. Tribunal Superior, 90 D.P.R. 656, 675 (1964).

[28] Carlo v. Srio. de Justicia, *supra*, p. 362.

[29] Suárez Morales, *supra*, p. 52.

propiedad confiscada y la comisión del delito".[30] Como hemos visto, la doctrina que mediante la ficción jurídica responsabiliza directamente a la cosa tiene como objetivo derrotar la inocencia del dueño de la propiedad a ser confiscada, no así la inocencia de la persona quién se alega cometió el delito. La cosa no es co-autora del crimen.

## C.

Repetidamente, hemos resuelto que los estatutos relacionados con confiscaciones de propiedad privada serán interpretados de manera restrictiva y de forma consistente con la justicia y los dictados de la razón natural.[31] En particular, hemos manifestado que las "confiscaciones no son favorecidas por las cortes" y la interpretación restrictiva de los estatutos autorizándolas se impone "porque la naturaleza de la confiscación es punitiva".[32]

La confiscación civil es una acción independiente de la acción penal que por el mismo delito el Estado puede incoar contra un sospechoso en particular, de haber alguno.[33] Por eso, la confiscación *in rem* puede efectuarse antes de

---

[30] *Íd.*, p. 55, Rodríguez Díaz v. E.L.A., 2008 T.S.P.R. 120, 174 D.P.R. ___ (2008).

[31] Centeno Rodríguez v. E.L.A., *supra*, p. 913, Del Toro Lugo v. E.L.A., *supra*, p. 985 y 988.

[32] Pueblo v. González Cortés, 95 D.P.R. 164, 168 (1967).

[33] Del Toro Lugo v. E.L.A., *supra*, p. 983.

acusar a la persona, antes de que exista una declaración de culpabilidad o absolución o antes, incluso, de que se presente algún cargo criminal. No obstante, en el curso del proceso el Estado tiene que demostrar que la propiedad confiscada fue utilizada en una actividad delictiva.[34] Ello requiere que el Estado establezca que existe prueba suficiente y preponderante de la comisión de un delito y del nexo entre la comisión del delito y la propiedad confiscada.[35] No obstante, esto no quiere decir que no hay un vínculo entre el proceso civil de confiscación y la causa criminal.[36] Por el contrario, los elementos mencionados en Del Toro Lugo, *supra*, no tienen el propósito de divorciar totalmente al proceso civil de la acción penal. Más bien, establecen los estándares de prueba que tiene *que presentar el Estado* para satisfacer el procedimiento *in rem* ante una impugnación de confiscación.

En Downs v. Porrata, *supra*, p. 619, resolvimos que un indulto total, pleno e incondicional otorgado a un convicto por Ley de Armas convertía la propiedad confiscada, automáticamente, en "una propiedad inocente que puede revertir a su dueño, *puesto que es la culpa del dueño la que la convierte en un instrumento o medio ilícito para la*

---

[34] Rodríguez Díaz v. E.L.A., *supra*, p. 10.

[35] Del Toro v. E.L.A., *supra*, p. 983.

[36] Meléndez v. Tribunal Superior, *supra*.

*comisión de un delito*".[37] En cuanto a los argumentos del gobierno de que la culpabilidad recaía sobre la cosa, producto de la ficción jurídica creada por el proceso *in rem* y que el indulto tenía efecto únicamente sobre el convicto y no la propiedad confiscada, concluimos que "[l]a algunas veces útil ficción que la culpabilidad puede recaer sobre la cosa que sirve de instrumento para la comisión de un delito, haciendo abstracción de la voluntad criminal que la dirige, no tiene un valor absoluto".[38] De haber aplicado mecánicamente la llamada ficción jurídica del proceso *in rem* y la independencia total entre esta causa y el caso criminal contra el imputado del delito que produjo la confiscación, el indulto contra el convicto no hubiese 'liberado' a la cosa, la cual hubiera permanecido confiscada como co-autora no indultada del delito. La "justicia y los dictados de la razón natural" no permitían tal desenlace.[39]

Ésa no ha sido la única vez que resistimos una aplicación automática y absoluta de esta ficción jurídica en las confiscaciones *in rem*. En Ochoteco v. Tribunal Superior, 88 D.P.R. 517 (1963), se confiscó un vehículo por violaciones a la Ley de Armas. Las personas imputadas fueron declaradas no-culpables porque el registro del

---

[37] (Énfasis suplido).

[38] Downs v. Porrata, *supra*, p. 618.

[39] Del Toro Lugo, *supra*, p. 988.

vehículo fue ilegal. El dueño del vehículo, a quien no se le había señalado conducta criminal alguna, impugnó la confiscación. Aunque no atendimos directamente el asunto de la absolución de los acusados, manifestamos lo siguiente:

> [N]o podemos convenir con la Sala sentenciadora en que situaciones como éstas tienen por única contestación el hecho de que la acción va dirigida a la cosa *res*, por lo que los derechos de terceros inocentes, ni están envueltos, ni están protegidos. Una generalización así de la norma de derecho aplicable no es en todos los casos procedente. Cada caso debe verse y pasarse a la luz de sus hechos, ya que la naturaleza *in rem* de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo.[40]

La relación entre el acto delictivo y la propiedad confiscada es de suma importancia ya que, con la excepción de aquellos objetos que son en sí mismos delictivos, como las sustancias controladas, muchas de las propiedades incautadas no son de por sí delictivas. Si esta propiedad útil no tiene conexión con la comisión de un delito y puede ser aprovechada para fines lícitos, como es el caso de los vehículos, no hay razón para que continúe ocupándola el Estado.[41] Por eso el Estado tiene la obligación de establecer la conexión de la propiedad con el delito.[42] De lo contrario, la propiedad mantiene su naturaleza inocente y útil.

---

[40] Ochoteco v. Tribunal Superior, *supra*, pp. 527-528.

[41] Downs v. Porrata, *supra*, p. 619.

[42] Pueblo v. González Cortés, *supra*.

D.

Como ya hemos visto, la jurisprudencia del Tribunal Supremo de Estados Unidos ha acortado el espacio entre las confiscaciones civiles *in rem* y los procedimientos de tipo criminal. Consciente de la multiplicidad de estatutos de confiscación *in rem*, tanto federales como estatales, el Tribunal Supremo de los Estados Unidos ha elaborado un estándar para determinar si en esos casos aplican las garantías de los procedimientos criminales. En United States v. One Assortment of 89 Firearms, 465 U.S. 354, 362 (1983), el Tribunal explicó que la controversia estriba en si el proceso de confiscación es, por intención estatutaria o por su propia naturaleza, criminal y punitivo o civil y remedial. Así, al distinguir entre lo criminal y lo civil, el Tribunal Supremo federal equipara lo punitivo con lo criminal y lo civil con lo reparador. Igual ocurrió en el caso de Austin v. United States, 509 U.S. 602 (1992), en donde se hizo la distinción entre el elemento de la reparación y el castigo. Como hemos visto, el objetivo de nuestra Ley Uniforme de Confiscaciones, *supra*, es punitivo, al igual que su naturaleza, y se concibe como un castigo adicional por la comisión de un delito.[43]

---

[43] *Véase además* U.S. v. Seifuddin, 720 F.2d 1074 (9th Cir. 1987). En Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 697 (1965), a pesar de que el propio Tribunal Supremo de Pennsylvania había caracterizado el proceso de confiscación como civil, el Tribunal Supremo federal resolvió que aunque tuviera una forma civil su naturaleza bajo la ley del estado era penal.

En cuanto a la ficción jurídica que permite ir directamente contra la propiedad ocupada como si ésta fuese responsable de la conducta delictiva, el Tribunal Supremo federal no ha favorecido su uso desmedido y lo ha avalado, estrictamente, cuando se trata de derrotar la acción del dueño inocente para recuperar su propiedad que ha sido utilizada indebidamente por un tercero.[44] En Austin v. United States, *supra*, el Tribunal Supremo de los Estados Unidos vinculó la ficción jurídica del proceso *in rem*, precisamente, *a la alegación del dueño como tercero inocente*. Sobre eso nos dice el Supremo federal: "[F]orfeiture has been justified on two theories –that the property itself is 'guilty' of the offense, and that the owner may be held accountable for the wrongs of others to whom he entrusts his property. *Both theories rest, at bottom, on the notion that the owner has been negligent in allowing his property to be misused and that he is properly punished for that negligence*".[45] En otras palabras, la ficción jurídica subyacente en el proceso de confiscación *in rem* debe utilizarse tan sólo para justificar la ocupación de bienes que son propiedad de un dueño inocente. No puede utilizarse este recurso ficticio para concluir que puede haber una propiedad culpable de delito sin que un ser humano efectivamente haya cometido dicho delito.

---

[44] Austin v. United States, *supra*.

[45] *Íd.,* p. 615. (Énfasis suplido).

Finalmente, la jurisprudencia federal también ha distinguido entre el bien inherentemente delictivo y aquél que es útil para otros efectos inocentes.[46]

III.

Cónsono con nuestras expresiones sobre la necesidad de una interpretación restrictiva de las leyes que autorizan las confiscaciones *in rem* y con el objetivo punitivo de la Ley Uniforme de Confiscaciones, *supra*, nuestra jurisprudencia ha reconocido que el desenlace del procedimiento civil está íntimamente relacionado a la causa criminal. Específicamente, a partir de la figura del impedimento colateral por sentencia, hemos reconocido una serie de eventos en el área criminal que invalidan la confiscación impugnada en el proceso civil *in rem*.

A.

La doctrina de impedimento colateral por sentencia, como modalidad de la figura de cosa juzgada, opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia válida y final y tal determinación es concluyente en un segundo pleito entre las mismas partes, aunque estén envueltas causas de acción

---

[46] Plymouth Sedan v. Pennsylvania, *supra*, p. 700.

distintas.[47] Esta doctrina tiene por base tanto la figura de cosa juzgada recogida en el artículo 1204 del Código Civil,[48] como la "influencia del derecho anglosajón proveniente de los Estados Unidos".[49] Por tanto, el desarrollo de esta doctrina no ha tenido en nuestra jurisdicción una trayectoria definida, pues en ocasiones se ha tratado como institución independiente, mientras en otra se ha considerado una modalidad de la doctrina de cosa juzgada.[50] En síntesis, "la doctrina de impedimento colateral se distingue de la cosa juzgada en que para aplicar la primera no es necesario que se dé el requisito de identidad de causas necesario para la segunda".[51]

Hemos resuelto que "la doctrina de impedimento colateral por sentencia no aplica de manera automática a procedimientos de impugnación de confiscación relacionados a los mismos hechos de una acción penal previamente adjudicada.[52] No obstante, "[e]n nuestra jurisdicción la

---

[47] Suárez v. E.L.A., *supra*, p. 59, A & P v. Gen. Contractos v. Asoc. Caná, 110 D.P.R. 753, 763 (1981).

[48] 31 L.P.R.A. § 3343.

[49] A & P v. Gen. Contractos y Asoc. Caná, *supra*, p. 762.

[50] *Íd.*, p. 763.

[51] Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 221 (1992).

[52] *Íd.*, First Bank, Univ. Ins. Co. v. E.L.A., 156 D.P.R. 77, 83 (2002). Hay que señalar que en el caso de First Bank v. E.L.A., *supra*, uno los pasajeros del vehículo hizo declaración de culpabilidad por posesión de sustancias controladas mientras no se determinó causa probable para arresto contra el poseedor del vehículo. Nuestra negativa a aplicar la doctrina de impedimento colateral por sentencia

absolución en los méritos adjudica con finalidad
irreversible el hecho central, tanto del caso criminal como
el de confiscación, de que el vehículo no se utilizó para
[la comisión del delito]".[53] Ello, a pesar de la diferencia
en el quantum de prueba que se requiere en el caso criminal
*vis a vis* la causa civil *in rem*. Al así resolver, hemos
reconocido que si no prospera la causa criminal en contra
de la persona imputada, es difícil continuar la
confiscación en el área civil, a pesar de que el estándar
de preponderancia de la prueba requerido en el proceso
civil es sustancialmente menor al de prueba más allá de
duda razonable que exige la causa criminal. La sentencia
absolutoria en el juicio criminal "tiene un valor y
trascendencia que amparan no sólo la libertad, sino también
el derecho de propiedad del absuelto, y que [la propiedad]
no es por su naturaleza instrumento de crimen y sí un bien
mueble destinado al aprovechamiento por su dueño en
actividades lícitas".[54]

En Del Toro Lugo v. E.L.A., *supra*, no se encontró
causa para arresto contra la persona imputada del delito

---

automáticamente, en ese caso, respondía a que la ausencia
de causa probable en cuanto al poseedor no impedía la
confiscación pues el pasajero ya se había declarado
culpable. Esa declaración de culpabilidad del pasajero
permitía que continuara la acción *in rem* y la determinación
de no causa contra el poseedor no podía ser utilizada como
impedimento.

[53] Del Toro Lugo v. E.L.A., *supra*, p. 988.

[54] *Íd.*, p. 989.

que dio base a la confiscación de un vehículo. El foro de instancia no creyó el testimonio del agente en cuanto a la razonabilidad del registro realizado, por lo cual determinó que éste fue ilegal. En el proceso civil de impugnación de la confiscación se presentó copia certificada de la resolución de no causa dictada por el tribunal en la causa criminal. El foro de instancia en el caso civil determinó que la doctrina de impedimento colateral por sentencia no aplicaba porque el sobreseimiento de los cargos criminales no fue el producto de una determinación sobre los méritos del caso. Resolvimos en ese momento que la regla de exclusión se extendía al proceso civil.[55] Por tanto, revocamos la determinación del Tribunal de Primera Instancia había denegado la demanda de impugnación de confiscación.

En Suárez v. E.L.A., *supra*, resolvimos que cuando los cargos por el delito que dieron base a la confiscación de una propiedad son desestimados por incumplimiento con los términos de juicio rápido,[56] la demanda de impugnación debe declararse con lugar. Llegamos a esa resolución, no

---

[55] "Resolvemos que la determinación *final y firme* respecto a la exclusión o supresión de una evidencia ilegalmente obtenida, hecha en el procedimiento penal por el delito que da base a la confiscación, constituirá cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia". Del Toro Lugo v. E.L.A., *supra*, p. 997. (Énfasis en original).

[56] 34 L.P.R.A. Ap. II R. 64(n).

obstante el hecho de que el ELA aún podía presentar nuevamente los cargos que fueron originalmente desestimados, pues la desestimación se había tornado final y firme, y aunque habían pasado más de dos años y medio, el Estado no había presentado nuevamente los cargos. Ante ese escenario, es decir, una sentencia desestimatoria firme por un lado y una dejadez del ELA en presentar nuevamente los cargos criminales, declaramos con lugar la demanda de impugnación de confiscación.

En Ford Motor Credit v. E.L.A., 2008 T.S.P.R. 137, resolvimos que procedía la devolución del vehículo incautado, dado el archivo de una causa criminal al amparo de la Regla 247.1 de Procedimiento Criminal.[57] Tras confrontar la naturaleza rehabilitadora de la citada Regla, y la confiscación, que *sirve de castigo*,[58] determinamos que el archivo y sobreseimiento de la causa criminal, tras la declaración de rehabilitación, constituía una exoneración en los méritos.[59]

A igual conclusión llegamos en Díaz Morales v. Departamento de Justicia, 2008 T.S.P.R. 175. En este caso,

---

[57] 34 L.P.R.A. Ap. II R. 247.1.

[58] Ford Motor Credit v. E.L.A., 2008 T.S.P.R. 137, p. 6. (Énfasis en original).

[59] Ford Motor Credit v. E.L.A., 2008 T.S.P.R. 137, p. 15. En particular, manifestamos que "una vez se archiva la denuncia…se adjudica de forma favorable al acusado y se dispone con finalidad del hecho central del cual depende la confiscación: la comisión de un acto delictivo". Díaz Morales v. Departamento de Justicia, 2008 T.S.P.R. 175, p. 8, en referencia a Ford Motor Credit v. E.L.A., *supra*.

un menor imputado de una falta por sustancias controladas se sometió a un proceso de desvío que culminó en el archivo definitivo de la querella en su contra. Resolvimos que procedía la devolución de la propiedad confiscada.

De lo anterior se desprende un decidido desarrollo de nuestra jurisprudencia hacia condicionar el proceso civil de confiscación al resultado de la causa criminal *contra el alegado autor del delito que da base a dicha confiscación*, incluso en casos en donde la absolución en el caso criminal no sea en los méritos. Es decir, no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sentencia, sino de excepciones a la independencia del proceso *in rem* basadas en la extinción de la acción penal contra la persona presuntamente responsable del delito.

B.

La jurisprudencia federal estadounidense contiene algunas instancias donde se condiciona el proceso civil de confiscación al desenlace de la causa criminal. En <u>Plymouth Sedan v. Pennsylvania</u>, *supra*, el Tribunal Supremo federal aplicó la garantía constitucional contra los registros irrazonables en casos criminales a los procesos de confiscación si éstos, aunque se denominen como civiles, tienen naturaleza punitiva. Al determinarse en el caso criminal que el registro fue ilegal, no podía sostenerse la confiscación de la propiedad.

En United States v. One Assortment of 89 Firearms, *supra*, el Tribunal Supremo de los Estados Unidos se enfrentó a la interrogante de si una absolución en el caso criminal conllevaba la devolución de la propiedad incautada que se estaba litigando en el proceso civil. En este caso, el Tribunal entendió que podía continuar el proceso civil de confiscación porque éste, *según su naturaleza estatutaria, era más de corte civil que criminal.* Una conclusión distinta, es decir, que según el estatuto aplicable la confiscación sea más criminal que civil, conllevaría que la absolución en la causa penal resultara en la devolución de la propiedad.[60]

C.

La Asamblea Legislativa ha reconocido el vínculo entre la causa criminal contra el presunto autor del delito base y la acción civil de confiscación. De igual forma, la ley vigente coincide con nuestros pronunciamientos en cuanto a la aplicación de la doctrina de impedimento colateral por sentencia que condiciona el proceso civil a la causa criminal. La Ley número 18 de 1 de enero de 2003 enmendó la Ley Uniforme de Confiscaciones, para eliminar un inciso añadido por la Ley número 32 de 14 de enero de 2000 que

---

[60] *Véase además* U.S. v. $84,740.00 Currency, 981 F.2d 1110 (9th Cir. 1992), en donde se continuó el proceso civil no obstante el desenlace en el caso criminal *porque se entendió que el proceso civil era más reparador que punitivo.*

disponía que el resultado favorable al acusado no sería impedimento a la acción civil de confiscación. La Exposición de Motivos de la Ley número 18,[61] refleja con gran claridad el cambio de pensar de la Asamblea Legislativa y su decisión de vincular la causa criminal contra el presunto autor del delito con el proceso civil de confiscación. Específicamente, la Asamblea Legislativa manifestó que todo lo plasmado en la Ley número 32, se hizo "sin tomar en consideración lo resuelto por el Tribunal Supremo" en Carlo v. Srio. de Justicia, y Del Toro Lugo v. E.L.A.[62] Por tanto, la Ley número 18 elimina el inciso añadido por la Ley número 32 para que la Ley Uniforme de Confiscaciones, *supra*, se "ajuste al ordenamiento jurídico vigente y sobre todo al mandato constitucional".[63] Al eliminar el inciso añadido por la Ley número 32 al artículo 2 de la Ley Uniforme de Confiscaciones, *supra*, la Asamblea Legislativa también expresó que esa enmienda "va en contra de los postulados constitucionales fundamentales en una democracia…[y] violenta el principio fundamental del proceso de confiscación: el cual es que para que una confiscación se pueda sostener le corresponde al ELA

---

[61] Leyes de Puerto Rico 2003, pp. 64-65.

[62] Leyes de Puerto Rico 2003, p. 64. "Dicha enmienda [Ley número 32] vulnera el derecho del acusado a no ser juzgado dos veces por el mismo delito y el derecho a no ser privado de su propiedad sin el debido proceso de ley y previo justa compensación".

[63] *Íd.*, p. 65.

demostrar que la propiedad confiscada fue utilizada en una actividad delictiva".[64]

Las declaraciones de la Asamblea Legislativa, expresamente repudiando el objetivo la Ley número 32 de desvincular el proceso civil de confiscación de la acción penal contra el presunto autor del delito base, constituyen la postura legislativa vigente.

IV.

En nuestro ordenamiento, solamente las personas naturales o jurídicas pueden cometer un delito.[65] Como se desprende del artículo 15 del Código Penal de 2004,[66] para determinar que, en efecto, se ha cometido un delito, hace falta una acción u omisión, que dicha acción u omisión esté en violación de una ley que lo prohíba u ordene, que se pruebe la ocurrencia de esa acción u omisión y que ésta conlleve alguna pena o medida de seguridad. En cuanto al elemento subjetivo, hace falta que el acto u omisión se haya llevado a cabo con intención criminal. Solamente se

---

[64] *Íd.*

[65] "Delito es un acto cometido u omitido en violación de alguna ley que le prohíbe u ordene, que apareja, al ser probado, alguna pena o medida de seguridad". Artículo 15 del Código Penal de 2004, 33 L.P.R.A. § 4643. Las penas contempladas en el Código solamente son aplicables a personas naturales, 33 L.P.R.A. § 4677, o a personas jurídicas, 33 L.P.R.A. § 4711.

[66] 33 L.P.R.A. § 4643.

incurrirá en delito mediando negligencia cuando la ley lo disponga expresamente.[67]

Por otra parte, toda persona imputada o acusada de delito se presume inocente hasta que se pruebe su culpabilidad más allá de duda razonable en un proceso judicial.[68] Por tanto, no se puede determinar con certeza jurídica la comisión de un delito hasta que una persona sea declarada culpable de forma final y firme.

En cuanto a la muerte de la persona imputada de delito, sabemos que ésta extingue la acción penal.[69] Siendo ello así, una persona que muere antes de ser imputada, acusada o convicta de delito sigue cobijada por la presunción de inocencia. Incluso en casos de muerte posterior a la convicción y sentencia, pero antes de que ésta se convierta en final y firme por no haber concluido el proceso apelativo, hemos resuelto que "debe ponerse de inmediato punto final al proceso y ordenar retroactivamente el sobreseimiento de las acusaciones".[70] Esto, pues el

---

[67] 33 L.P.R.A. § 4650.

[68] Sección 11, artículo II, Constitución de Puerto Rico; Pueblo v. Irizarry, 156 D.P.R. 780, 786 (2002).

[69] Artículo 97(a) del Código Penal de 2004. 33 L.P.R.A. § 4725(a). Las penas también se extinguen cuando la persona sentenciada fallece. Artículo 103(a) del Código Penal de 2004. 33 L.P.R.A. § 4731(a); véase además E.L.A. v. Rodríguez Santana, 163 D.P.R. 825 (2005).

[70] Pueblo v. Morales Díaz, 120 D.P.R. 249, 251 (1987). "[T]odo acto íntimo o daño criminal, público, es sepultado con el ofensor". Íd., p. 253, citando a United States v. Daniels, 47 U.S. (6 How.) 11, 13 (1848).

fallecimiento del imputado o convicto anula, no sólo el trámite apelativo, sino que pone fin a todos los procedimientos relativos a la acusación desde su origen.[71]

V.

El proceso de incautación de propiedades al amparo de la Ley Uniforme de Confiscaciones, *supra*, es civil en su forma pero punitivo en su naturaleza. Su objetivo, claramente identificado por la Asamblea Legislativa, es castigar al delincuente con la pérdida de su propiedad además de la posible pérdida de su libertad. A ello se refiere la Legislatura cuando habla del propósito disuasivo de la confiscación.

---

[71] Algunos tribunales federales de distrito y circuito se han expresado sobre el efecto de la muerte del imputado de delito en el proceso civil de confiscación. *Véase* United States v. Oberlin, 718 F.2d 894 (9th Cir. 1983), en el que el Tribunal de Apelaciones federal para el Noveno Circuito determinó que procedía el archivo del proceso de confiscación, pues al morir el convicto se extinguieron tanto la causa penal como el procedimiento de confiscación, por ser éste esencialmente de naturaleza penal. ("It is a well-settled rule that actions upon penal statutes do not survive the death of the wrongdoer…[in this case], while some aspects of the forfeiture may have been remedial, there is no doubt that it was essentially penal".) En United States v. $47,409.00 in United States Currency, 810 F. Supp. 919 (N.D. Oh. 1993), el Tribunal de Distrito federal se enfrentó a la muerte del *presunto* autor del delito que sirvió de base para confiscar un dinero. El Tribunal resolvió que la determinación de continuar la acción confiscatoria dependía de su naturaleza: "Whether a cause of action survives the death of the alleged wrongdoer hinges upon a determination that the case is remedial or punitive in nature. *The former survives, the latter does not*". (Énfasis suplido). Al igual que en United States v. Oberlin, *supra*, la pregunta medular es si el proceso de confiscación es de naturaleza reparadora o punitiva.

Al amparo de nuestras interpretaciones constitucionales, y cónsono con la normativa federal vigente, hemos vinculado el resultado del proceso civil de confiscación al desenlace de la causa criminal contra la persona imputada del delito a base del cual se justifica la confiscación. En casos de exoneraciones, hemos ordenado la devolución de la propiedad confiscada, incluso en situaciones en las que dichas exoneraciones no adjudicaron los méritos de la acusación. Al proceso civil de confiscación se le ha atribuido la característica de ser *in rem* aplicando una ficción jurídica que permite ir directamente contra la cosa como si esta fuese responsable por el delito. Sin embargo, hemos visto que esta ficción jurídica sirve únicamente para derrotar las pretensiones del dueño que, amparándose en la doctrina del tercero inocente, reclama la devolución de su propiedad a pesar de que ésta fue efectivamente utilizada por otra persona en la comisión de un delito. En nuestro ordenamiento penal, esta ficción jurídica no convierte la propiedad incautada en autora del delito, como tampoco permite que se exonere a la persona acusada pero se declare culpable al objeto.

La acción penal, es decir la posibilidad que tiene el Estado para encausar a una persona imputándole la comisión de un delito, se extingue con la muerte de la persona imputada. Si la persona muere después de la convicción pero antes de que ésta sea final y firme, el archivo del caso

tiene efecto retroactivo hasta la presentación de la acusación. Es decir, en ambos supuestos, la persona muere cobijada aún por la presunción de inocencia. En estas circunstancias se extingue también la acción confiscatoria. De lo contrario, permitiríamos la confiscación de un bien sin que nadie sea convicto de delito, extendiendo irrazonablemente la ficción jurídica en la que se funda la acción, al extremo de que una 'cosa', por sí misma, sería culpable de la comisión de un acto delictivo. Nuestro ordenamiento jurídico no permite tal incongruencia.

## VI.

Por las razones expuestas anteriormente, se confirma la Sentencia del Tribunal de Apelaciones, se declara con lugar la demanda de impugnación de confiscación y se ordena la devolución del vehículo incautado.

Se dictará sentencia de conformidad.

Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Cooperativa de Seguros
Múltiples de Puerto Rico
     Apelado

Apelación

AC-2009-97

    v.

Estado Libre Asociado de
Puerto Rico, *et al.*
     Apelante

*SENTENCIA*

En San Juan, Puerto Rico, a 14 de enero de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la Sentencia del Tribunal de Apelaciones, se declara con lugar la demanda de impugnación de confiscación y se ordena la devolución del vehículo incautado.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez disiente sin opinión escrita.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo