ESTADO LIBRE ASOCIADO DE PUERTO RICO, peticionario, *v.* JUAN M. RODRÍGUEZ SANTANA c/p HIGGINS y OTROS, recurridos.

*Número:* CC-2003-956 *Resuelto:* 24 de febrero de 2005

*Roberto J. Sánchez Ramos*, procurador general, abogado de la parte peticionaria; *Antonio Bauzá Torres*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

Hoy nos corresponde resolver si la pena de restitución se extingue con la muerte del penado o si, por el contrario, ésta es transmisible a sus herederos.

Tras la exégesis de las disposiciones aplicables del Código Penal de Puerto Rico y el análisis de la naturaleza y de los objetivos de la pena de restitución, concluimos que ésta se extingue con la muerte del penado.

# I

Juan M. Rodríguez Santana, también conocido como Juan M. Higgins, ex alcalde del Municipio de Humacao, fue hallado culpable de haber cometido setenta y siete infracciones al Art. 166(a) del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4272(a) (apropiación ilegal agravada), y trece infracciones al Art. 216(a) y (k) del Código Penal, 33 L.P.R.A. sec. 4391(a) y (k) (delitos contra los fondos públicos).

Rodríguez Santana fue sentenciado a cumplir, concurrentemente, doce años de reclusión por los delitos de apropiación ilegal y diez años por los delitos contra los fondos públicos. Además, se le impuso una pena de restitución de $90,000, la que fue computada a razón de $1,000 por cada uno de los cargos por los que fue condenado. Dicho dictamen fue confirmado por este Tribunal en el caso *Pueblo v. Rodríguez Santana*, 146 D.P.R. 860 (1998).

Posteriormente, el tribunal de instancia, por solicitud de Rodríguez Santana, modificó su sentencia para excluir del cómputo de la pena de restitución las cantidades correspondientes a los trece cargos por infracción al Art. 216(a) y (k) del Código Penal, *supra*. Esto en atención a que el Código Penal no contenía expresamente la pena de restitución para dichos delitos. Por tal razón, la pena de restitución se redujo de $90,000 a $77,000.

En el 2000 el Estado, con el propósito de cobrar la pena de restitución en cuestión, presentó una Demanda en Ejecución de Sentencia en el Tribunal de Primera Instancia, Sala Superior de lo Civil de Humacao. Se incluyeron como demandados a Rodríguez Santana, a su esposa y a la sociedad legal de gananciales compuesta por éstos.

Así las cosas, Rodríguez Santana falleció durante la pendencia del litigio. De ahí que el Estado notificara su intención de enmendar la demanda para traer al pleito a la Sucesión de Rodríguez Santana. Ante tal situación, la

parte demandada adujo que procedía desestimar la demanda por el fundamento de que la pena de restitución se había extinguido con la muerte del penado.

El Tribunal de Primera Instancia, tras acoger los argumentos planteados por la parte demandada, desestimó la demanda. Oportunamente, el Estado presentó un recurso de apelación ante el entonces Tribunal de Circuito de Apelaciones, hoy Tribunal de Apelaciones, el cual confirmó el dictamen del tribunal de instancia. Inconforme, el Estado ha recurrido ante nos.

Mediante Resolución de 30 de enero de 2004, expedimos el auto de *certiorari*. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II

El Código Penal de Puerto Rico[1] es claro al disponer cuáles son las circunstancias particulares que han de concurrir para que se extinga la pena. Veamos.

La Sección Quinta de la Parte General del Código Penal, titulada *De las penas*, se divide en siete capítulos en los que, entre otros asuntos, se establece cuáles son las penas que se reconocen en nuestro ordenamiento jurídico, cuándo aplican y cómo se ejecutan, a saber: (I) Clases de Penas; (II) De las Penas Aplicables a las Personas Naturales; (III) De las Penas Aplicables a las Personas Jurídicas; (IV) Responsabilidad Civil; (V) De la Aplicación de las Penas; (VI) Determinación de la Reincidencia, y (VII) Sobre

---

[1] El Código Penal citado se refiere al Código vigente a la fecha presente, Ley Núm. 115 de 22 de julio de 1974, según enmendada. Por consiguiente, *no* hace referencia al Código Penal que entrará en vigor el 1ro de mayo de 2005, Ley Núm. 149 de 18 de junio de 2004, según enmendada. Independientemente de que el nuevo Código Penal aún no ha entrado en vigor (salvo sus Arts. 312 y 313), el articulado pertinente al caso de marras no varía de manera significativa. Nótese que el Anejo del nuevo Código Penal contiene una Tabla de concordancias y antecedentes entre el Código Penal de 1974 y el nuevo Código Penal, Parte General, que puede servir como instrumento útil de contrarreferencia entre ambos códigos.

Concurso de Delitos. Arts. 38–65 del Código Penal, 33 L.P.R.A. secs. 3191–3323.

◾ El Art. 38 del Código Penal, 33 L.P.R.A. sec. 3191, ubicado en el Capítulo I de dicho cuerpo de ley, incluye una lista taxativa de las penas que se reconocen en nuestro ordenamiento jurídico, al disponer:

Las penas que este Código establece son:
(a) Reclusión.
(b) Restricción domiciliaria.
(c) Multa.
(d) Suspensión.
(e) Cancelación de certificado de incorporación.
(f) Suspensión o revocación de licencia, permiso o autorización.
(g) Disolución.
(h) *Restitución.*
(i) Prestación de servicios en la comunidad. (Énfasis suplido.)

◾ El Art. 39 del Código Penal, 33 L.P.R.A. sec. 3201, el cual aparece tipificado en el Capítulo II titulado De las Penas Aplicables a las Personas Naturales, establece:

Las penas que este Código establece para las personas naturales son:
(a) Reclusión.
(b) Restricción domiciliaria.
(c) Multa.
(d) Suspensión o revocación de licencia, permiso o autorización.
(e) *Restitución.*
(f) Prestación de servicios en la comunidad. (Énfasis suplido.)

◾ Tras enumerar y definir las penas que reconoce dicho cuerpo de ley, el Código Penal determina expresamente cómo se extinguen esas penas previamente enumeradas. Sobre el particular, el Art. 81 (33 L.P.R.A. sec. 3431) dispone lo siguiente:

*Las penas se extinguen por*:
(a) *Muerte del penado.*
(b) Indulto u otra acción de clemencia ejecutiva.
(c) Cumplimiento de la sentencia impuesta. (Énfasis suplido.)

De una lectura del antes citado artículo se desprende, sin lugar a equívocos, que en nuestro ordenamiento jurídico las penas se extinguen con la muerte del penado. Merece especial énfasis el hecho de que el Art. 81, *supra*, no hace distinción alguna sobre los tipos de pena que se extinguen de esa forma. En virtud del lenguaje y el espíritu inequívoco de la ley aplicable, la respuesta a la interrogante ante nos es forzosa: la restitución es una pena; todas las penas se extinguen con la muerte del penado; ergo, la pena de restitución queda extinta con la muerte del penado.

Los antes citados artículos del Código Penal responden de manera fehaciente la interrogante que se nos ha planteado; de ahí que baste con practicar un ejercicio de lógica y de exégesis estatutaria para dirimir la controversia ante nos. En reiteradas ocasiones la jurisprudencia de este Tribunal se ha hecho eco de la máxima recogida en el Art. 14 del Código Civil, 31 L.P.R.A. sec. 14, cuya jurisprudencia interpretativa establece que cuando la ley es clara y libre de toda ambigüedad, estamos obligados a observar su letra. *Com. Pro Perm. Bda. Morales v. Alcalde*, 158 D.P.R. 195 (2002). Más aún, por medio de opinión del Tribunal emitida por el Juez Asociado Ramírez Bages, hemos reconocido que lo dispuesto en el referido Art. 14, consagrado en nuestro Código Civil, " 'es de aplicación lo mismo a las leyes penales que civiles' ". *Meléndez v. Tribunal Superior*, 90 D.P.R. 656, 660 (1964).[2]

---

[2] Dicha opinión reitera lo expresado por el voto particular del Juez Asociado MacLeary en *El Pueblo v. Benítez et al.*, 19 D.P.R. 246, 263 (1913). Véase, además, *El Pueblo v. Ramos*, 18 D.P.R. 993, 1004 (1912).

De un examen en conjunto, tanto del antes referido postulado de exégesis como del Art. 49A del Código Penal, 33 L.P.R.A sec. 3212, se desprende la clara intención del legislador de establecer que la pena de restitución recae exclusivamente sobre el penado:

En adición a la pena que se le imponga *al convicto* por el delito cometido, el tribunal podrá imponer la pena de restitución.

La pena de restitución consiste en la obligación *impuesta al convicto* por el tribunal de pagar a la parte perjudicada daños y pérdidas que le hubiere ocasionado a su persona o a su propiedad, como consecuencia de su acto delictivo. (Énfasis suplido.)

Además resulta revelador que, entre los criterios que se toman en cuenta para fijar la cuantía de la pena de restitución, se encuentra la capacidad de pago del *convicto*. En caso de que el penado no contase con recursos, éste podría cumplir la pena con trabajo libre. Sobre el particular, el antes citado artículo dispone que

[e]l tribunal, a solicitud del penado, después de dictada sentencia imponiendo el pago de restitución, discrecionalmente podrá autorizar el pago o amortización de la restitución o de la parte insoluta de la misma mediante la prestación por el convicto de trabajo libre bajo la supervisión y jurisdicción del Departamento de Rehabilitación y Corrección .... Íd.

Amerita especial destaque que este Tribunal, en el caso *Pueblo v. Morales Díaz*, 120 D.P.R. 249, 251–252 (1987), ya tuvo oportunidad de adoptar la interpretación estatutaria antes esbozada. En dicho caso, expresamos que

"la defunción borra del mapa jurídico a un ser que es objeto de derechos y obligaciones *modi pleni* ...". Ato del Avellanal, *op. cit.* Este resultado se impone por imperativo de los Arts. 77 y 81 del Código Penal preceptivos de que la muerte del imputado o penado extingue la acción penal y *las penas* —33 L.P.R.A. secs. 3411 y 3431— y la interacción de principios constitucionales cardinales.

Se ha dicho que *la extinción de la causa o del castigo penal* es consecuencia de "lógica y fácil percepción". D. Nevares-

Muñiz, *Código Penal de P.R., Comentado y Revisado*, San Juan, Rev. C. Abo. P.R., 1986, pág. 131. Sin embargo, "[e]ste principio, hoy por todos reconocido, no siempre fue observado, y en el mismo derecho romano, pero sobre todo en el derecho de la Edad Media y a[u]n en épocas posteriores, se encuentran frecuentes casos de penas impuestas a los cadáveres. *Actualmente nadie duda que la muerte del delincuente no sólo extingue la acción penal sino también la pena de carácter personal* a[u]n cuando haya recaído sentencia firme."

*La glosa científica clasifica la causa de extinción por muerte como de naturaleza física atribuible al carácter inherentemente personal del evento. Se funda, además, en el "principio de individualización de la pena, ésta queda limitada al autor del delito".* (Citas omitidas y énfasis suplido.)

En idénticos términos se expresa el reconocido tratadista de derecho penal, Santiago Mir Puig, al comentar el principio de que la pena se extingue con la muerte del penado:

Ahora bien, cabe interpretar que la muerte del posible reo extingue no sólo la acción penal, sino también la responsabilidad penal que pudiera haber nacido, si lo cometió, del hecho punible.

Que en puridad sería posible considerar subsistente la responsabilidad penal del sujeto tras su muerte, lo demuestra no sólo la existencia de frecuentes ejemplos históricos de penas impuestas a cadáveres .... [No obstante, el Código Penal de España] excluye la posibilidad de transmitir a los herederos toda responsabilidad penal, personal o patrimonial, a diferencia de lo que ocurre con la responsabilidad civil. *Todo ello es consecuencia del principio de personalidad de las penas, característico del Derecho penal actual.* (Énfasis suplido y citas omitidas) S. Mir Puig, *Derecho Penal*, 5ta ed., Barcelona, Ed. Reppertor, S.L., 1998, pág. 777.

 Adoptar la postura que propone el Estado implicaría que los herederos de un convicto estuviesen obligados a cumplir la pena de restitución que le impusieron a su causante por delitos que no fueron cometidos por ellos. Como acertadamente indica el tratadista Mir Puig:

El *principio de personalidad* impide castigar a alguien por un hecho ajeno. *Hoy nadie admite la responsabilidad colectiva*

*que en otro tiempo llevaba a castigar a todos los miembros de una familia o pueblo por el hecho de uno de ellos.* (Énfasis suplido.) Mir Puig, *op. cit.*, pág. 97.

## III

El curso de acción que tomó el Estado en este caso no sólo es improcedente, sino que resulta extraño e inusitado, ya que desde sus inicios canalizó el reclamo de la pena de restitución a través de la presentación de un procedimiento judicial distinto, de naturaleza civil, que denominó "demanda de ejecución de sentencia". El articulado del Código Penal relativo a la pena de restitución establece expresamente cuál es el procedimiento que ha de seguirse para vindicar ese reclamo y, específicamente, dispone que la sala criminal que dicta la sentencia penal es la que conservará jurisdicción sobre el penado hasta que se satisfaga la pena o ésta sea dejada sin efecto. Sobre el particular, el Art. 49A, *supra*, dispone, en lo pertinente que

> [e]l tribunal conservará jurisdicción sobre el convicto a los fines del cumplimiento de la orden de amortización así dictada, incluyendo, en los casos apropiados, la facultad de dejar sin efecto dicha orden, exigir el pago total de la restitución, o en su caso, el balance insoluto de la misma.

No surge del expediente que en el presente caso el Estado haya hecho las gestiones correspondientes en aras de que Rodríguez Santana cumpliese la pena de restitución, según los términos antes citados del Código Penal. Sin embargo, el Estado pretende que la Sucesión de Rodríguez Santana cumpla con la pena de restitución que se le impuso a su causante. Según se desprende de la anterior discusión, dicho reclamo no encuentra base alguna en nuestro ordenamiento jurídico.

Por los fundamentos antes esbozados, *la pena de restitución que se le impuso a Rodríguez Santana se extinguió con el fallecimiento del penado. En mérito de lo antes ex-*

*presado, se confirma la sentencia dictada por el Tribunal de Apelaciones.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri concurrió con el resultado sin opinión escrita.