La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
¿Qué efecto tiene la muerte de una persona imputada de delito en el procedimiento de confiscación civil de la propie-dad que aparentemente se utilizó al cometer el acto delic-tivo? En este caso, veremos si la extinción de la causa penal producto de la muerte de la persona imputada tiene como consecuencia la extinción del proceso de confiscación de la propiedad ocupada y su consiguiente devolución.
I
Los hechos del caso de autos son sencillos. El 8 de junio de 2004, el Estado Libre Asociado (Estado o ELA) ocupó un vehículo marca Toyota, modelo Sequoia del 2002, con la tablilla ENK-932. El ELA alegó que el vehículo lo utiliza-ron para cometer varios delitos, en violación a los Artículos 401 y 404 de la Ley de Sustancias Controladas de Puerto Rico,(1) entre otros. Como consecuencia, el Estado confiscó el automóvil.
El 17 de junio de 2004, se le notificó la confiscación del vehículo a “Reliable Finances de Puerto Rico” (Reliable), entidad financiera en cuyo favor existía el correspondiente *660 gravamen o deuda por financiamiento. Dicha notificación, además, estableció la tasación del vehículo en $33,950. El 30 de junio de 2004, Reliable y la aquí apelada Cooperativa de Seguros Múltiples (Cooperativa) presentaron oportuna-mente una demanda de impugnación de la confiscación ante el Tribunal de Primera Instancia. La Cooperativa es la entidad aseguradora del vehículo confiscado con cu-bierta para el riesgo o pérdida por confiscación.
En su demanda de impugnación, Reliable y la Coopera-tiva alegaron que el vehículo confiscado nunca se utilizó en violación a las disposiciones de la Ley de Sustancias Con-troladas de Puerto Rico y cuestionaron las bases para la incautación del vehículo, así como su tasación. Además, alegaron que la confiscación era nula porque no se había cumplido con los requisitos procesales de la Ley Número 93 de 13 de julio de 1988, según enmendada, conocida como la Ley Uniforme de Confiscaciones.(2)
Posteriormente, el Ministerio Público sometió cargos contra el Sr. Omel Serrano Rivera por infracciones a los citados Artículos 401 y 404 de la Ley de Sustancias Con-troladas de Puerto Rico, es decir, por los mismos hechos que propiciaron la confiscación del vehículo. Sin embargo, el señor Serrano Rivera murió antes de que comenzara el juicio, por lo cual el Tribunal de Primera Instancia ordenó el sobreseimiento y archivo del caso, al amparo del Artículo 97 del Código Penal de 2004.(3)
Al conocer del fallecimiento del señor Serrano Rivera y el sobreseimiento y archivo de la causa criminal en su contra, la parte apelada solicitó que se declarara “con lugar” su demanda de impugnación como cuestión de derecho y se procediera a la devolución del vehículo. El ELA se opuso. Alegó que el archivo de la causa criminal no se podía im-putar al Estado y que, como la confiscación era una acción in rem, se podía continuar con el proceso de confiscación *661 contra el bien ocupado, independientemente del archivo de la causa criminal contra el alegado autor del delito. Ade-más, planteó que el archivo en el caso criminal no fue en los méritos, por lo cual en la acción de impugnación no se puede aplicar la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia.
El 25 de noviembre de 2008, el Tribunal de Primera Instancia declaró “sin lugar” la moción de sentencia suma-ria presentada por la parte apelada. El foro de instancia fundamentó su denegatoria en que “[au]n cuando la causa criminal se extinguió por la muerte del imputado, resulta ser una razón totalmente ajena a los méritos de la acusación”.(4) El 15 de diciembre de 2008 se celebró la vista en su fondo. El Tribunal de Primera Instancia se reservó el fallo, lo cual motivó que la Cooperativa recurriera al Tribunal de Apelaciones mediante un recurso de certiorari, declarado académico al dictarse una Sentencia el 27 de enero de 2009 y declararse “sin lugar” la demanda de im-pugnación de confiscación. Es de esta sentencia que Reliable y la Cooperativa interpusieron un recurso de apelación ante el Tribunal de Apelaciones.
Por su parte, el Tribunal de Apelaciones concluyó que como el procedimiento criminal contra el señor Serrano Rivera se archivó conforme a lo que dispone la Regla 247(a) de Procedimiento Criminal,(5) por la muerte del imputado, y dado el carácter punitivo de la confiscación, la incauta-ción del vehículo no debía prevalecer, aun cuando no se produjo una determinación en los méritos que favoreciera al acusado. El Tribunal de Apelaciones razonó que cuando “el procedimiento criminal no culmina en un resultado favorable para el Estado, la confiscación no puede prevalecer”.(6) El foro intermedio resolvió que, al amparo del Artículo 97 del Código Penal, supra, se había extin- *662 guido la causa penal y, por consiguiente, no se sostenía la confiscación del vehículo. Por lo tanto, revocó al Tribunal de Primera Instancia y ordenó que se declarara “con lugar” la demanda presentada.(7)
Inconforme con esta determinación, el Estado nos soli-cita que revoquemos al Tribunal de Apelaciones. En sínte-sis, alega que la devolución del vehículo incautado no pro-cede automáticamente, puesto que el archivo en el caso criminal no fue producto de una determinación en los mé-ritos ni de una conducta atribuible al Estado. El ELA ar-gumenta que la naturaleza civil e independiente del proce-dimiento de confiscación in rem sobrevive la extinción de la acción penal producto de la muerte del alegado autor de la conducta criminal que sirve de fundamento para la confiscación. Ante un evidente conflicto entre paneles del Tribunal de Apelaciones(8) acogimos el recurso como una apelación. Con el beneficio de los alegatos de las partes, estamos en posición de resolver.
II
A. La Ley Uniforme de Confiscaciones autoriza al Estado a ocupar y hacer suya toda propiedad que se utilice en la comisión de ciertos delitos graves y menos graves, incluso violaciones a la Ley de Sustancias Controladas de Puerto Rico.(9) Se trata de una excepción al mandato *663 constitucional que prohíbe tomar propiedad privada para fines públicos sin justa compensación.(10) La aprobación de esta ley en 1988 fue parte del proceso que llevó a cabo el Estado a través de varias décadas para uniformar el meca-nismo de confiscación de propiedades previamente espar-cido en diferentes leyes especiales.
El propósito de la Ley Uniforme de Confiscaciones está plasmado con claridad en su Exposición de Motivos: “La confiscación de los bienes que propician la comisión de un delito puede ser un elemento disuasivo para el delincuente que por temor a exponerse al peligro de perder su propiedad limita su actividad delictiva o no le resulta tan fácil su realización.”(11) Además, se busca evitar que la propiedad se utilice para futuras actividades delictivas. (12) Es decir, se pretende desincentivar la conducta criminal al imponer un castigo adicional a la posible privación de la libertad tras un encausamiento penal, en este caso, la pérdida de la propiedad. Se trata de un esquema estatutario punitivo que, si bien en su forma procesal es civil, se asemeja más, por su naturaleza, al campo criminal. Por un lado, se vincula el proceso de confiscación con la conducta delictiva base que autoriza su ejecución de manera que, en su objetivo disuasivo y punitivo, constituya una herramienta adicional en los intentos del Estado por atender la problemática social de la criminalidad. Por otro lado, se separa procesalmente la confiscación de la acción penal, moviéndose “la persecución del criminal... de la esfera penal a la del proceso civil para incautarse de los bienes instrumentales del delito o resultantes de la operación o em- *664 presa criminal”. (13) Así, la confiscación es un mecanismo en la lucha contra el crimen y “actúa como una sanción penal adicional contra el criminal”. (Énfasis suplido.(14) Por lo tanto, aunque el proceso mantiene su forma civil, su obje-tivo sigue siendo punitivo.(15)
El proceso de confiscación tiene dos modalidades. La primera, de naturaleza puramente penal, es parte del proceso criminal dirigido contra el alegado autor del delito base que autoriza la confiscación. En ese proceso criminal, si se encuentra culpable a la persona imputada, la sentencia impondrá como sanción la confiscación del bien incautado. A esta modalidad de confiscación se le conoce como in personam. La segunda se define como un proceso civil en el que se va directamente contra la cosa a ser confiscada, separándolo procesalmente del encausamiento criminal contra el presunto autor del delito. A esta modalidad de confiscación se le conoce como in rem. Esta es la modalidad recogida en la Ley Uniforme de Confiscaciones.
No obstante esta distinción, consecuentemente hemos manifestado que el proceso de confiscación en la modalidad in rem tiene una marcada naturaleza criminal. (16) De igual forma, hemos determinado que la manera en que se aplica la sanción, el procedimiento que se utiliza y las defensas permitidas reflejan su propósito punitivo.(17) En cuanto a esto, aplica el principio reiterado de que “[n]o es la natura-leza de la acción, sino el verdadero propósito del estatuto, lo que nos debe guiar ...”.(18)
Lo anterior es cónsono con los pronunciamientos del Tribunal Supremo de Estados Unidos. En Plymouth Sedan v. *665 Pennsylvania, 380 U.S. 693 (1965), dicho Tribunal aplicó las garantías constitucionales contra los registros irrazo-nables en casos criminales a un proceso de confiscación civil. En ese caso, el Tribunal Supremo federal reconoció que aunque la confiscación tiene forma civil no deja de ser un proceso esencialmente criminal:
“[P]roceedings instituted for the purpose of declaring the forfeiture of a man’s property by reason of offences committed by him, though they may be civil in form, are in their nature criminal [and] though technically a civil proceeding, [it] is in substance and effect a criminal one .... [S]uits for penalties and forfeitures incurred by the commission of offences against the law, are of this quasi-criminal nature ....”(19)
El Tribunal Supremo federal también manifestó que, aunque se denomine como civil y se considere que es inde-pendiente a la causa criminal, el objetivo de este tipo de confiscación, al igual que el de un proceso criminal, es pe-nalizar por la comisión de un delito.(20)
B. En el proceso de confiscación in rem, se per-mite que el Estado vaya directamente contra la propiedad como parte de una ficción jurídica que considera que a la cosa, como medio o producto del delito, se le puede fijar responsabilidad independientemente del autor del delito.(21) En Carlo v. Srio. de Justicia, 107 D.P.R. 356, 360 (1978), explicamos que el proceso in rem tiene sus raíces en un momento de la historia “producto de la legítima preocupación del Estado con la práctica de la piratería y el contrabando a principios del siglo XIX [y] ha sido atemperada *666 en el decurso del tiempo por el recio surgimiento y difusión de las garantías de la Quinta Enmienda de la Constitución de los Estados Unidos contra más de un juicio por el mismo delito, la autoincriminación, la falta del debido proceso y la toma de propiedad privada para uso público, sin justa com-pensación ...”.(22)
Esa ficción jurídica justifica un proceso civil en el que se pretende confiscar una propiedad utilizada para cometer un delito, o producto de éste, cuando su dueño reclama inocencia y argumenta que no se le puede privar de su pro-piedad por la conducta criminal de un tercero. De esta si-tuación surge la doctrina del tercero inocente, que es la principal generadora de jurisprudencia sobre el proceso in rem de confiscación. Consecuentemente hemos resuelto que la ficción jurídica de la responsabilidad atribuida a la cosa derrota las alegaciones de inocencia del dueño si éste consintió o de otra manera entregó voluntariamente la po-sesión del bien a la persona que incurrió en la conducta criminal.(23) Como correctamente señala Vera Vera, “[l]a ficción legal persigue, punitivamente, al dueño de la cosa, bajo el supuesto de que ha tenido un comportamiento culpable o susceptible de reproche, al permitir o no supervisar adecuadamente el uso de la cosa para la comisión o como instrumento de un delito”.(24) No obstante, ello no significa que derrota la inocencia de la persona a quien se le imputa el delito que sirve de fundamento para justificar la confiscación.
Como consecuencia, la ficción jurídica de responsabili- *667 dad in rem ha sido severamente criticada. En Carlo v. Srio. de Justicia, supra, págs. 361-362, manifestamos que
[l]a jurisprudencia de Puerto Rico ha seguido la misma ruta de cautelosa atenuación de severidad en la aplicación del principio que Blackstone llamó superstición heredada de “los días ciegos” del feudalismo, hacia la vindicación del derecho de la persona inocente de la actividad criminal que da lugar a la confiscación.
Estas expresiones recogen el desarrollo del tema en la jurisprudencia del Tribunal Supremo federal, específica-mente el comentario de ese Tribunal en United States v. U.S. Coin & Currency, 401 U.S. 715, 720-721 (1971): “Even Blackstone, who is not known as a biting critic of the English legal tradition, condemned the seizure of the property of the innocent as based upon ‘superstition’ inherited from the ‘blind days of feudalism’.”(25) En este caso el Tribunal Supremo federal comenta, además, la peculiaridad de que se trata a una “cosa” como si fuese actora de delito.(26)
En cuanto a la relación entre la cosa y la conducta de-lictiva, fundamento que justifica la confiscación, hemos re-suelto que “[c]omo toda ley civil relacionada indirecta-mente con la comisión de un delito, su ánimo correctivo parte del supuesto de una persona culpable de su infracción”.(27) Igualmente, hemos reconocido que su obje-tivo es castigar la ofensa cometida contra la ley.(28) La co-nexión entre el proceso de confiscación in rem, por un lado, y la conducta criminal base y el autor de dicha conducta criminal, por el otro, es evidente: “El derecho del Estado de tomar posesión de la cosa surge del mal uso que se le haya *668 dado a ésta.”(29) Es decir, no obstante la ficción jurídica que permite ir directamente contra la cosa como si ésta fuera responsable de la conducta criminal, hemos reconocido que, al fin y al cabo, alguien tiene que utilizar la cosa delictivamente. También hemos reafirmado “el vínculo ne-cesario en todo caso de confiscación entre la propiedad con-fiscada y la comisión del delito”.(30) Como hemos visto, la doctrina que mediante la ficción jurídica responsabiliza directamente a la cosa tiene como objetivo derrotar la ino-cencia del dueño de la propiedad que será confiscada, no así la inocencia de la persona quien se alega cometió el delito. La cosa no es coautora del crimen.
C. Repetidamente, hemos resuelto que los estatutos relacionados con confiscaciones de propiedad privada se interpretarán de manera restrictiva y de forma compatible con la justicia y los dictados de la razón natural.(31) En particular, hemos manifestado que las “confiscaciones no son favorecidas por las cortes” y la interpretación restrictiva de los estatutos que las autorizan se impone “porque la naturaleza de la confiscación es punitiva”. (32)
La confiscación civil es una acción independiente de la acción penal que por el mismo delito el Estado puede incoar contra un sospechoso en particular, de haber alguno.(33) Por eso, la confiscación in rem se puede efectuar antes de acusar a la persona, antes de que exista una declaración de culpabilidad o absolución, o antes, incluso, de que se presente algún cargo criminal. No obstante, en el curso del proceso el Estado tiene que demostrar que la propiedad confiscada se utilizó en una actividad delictiva. (34) *669 Ello requiere que el Estado establezca que existe prueba suficiente y preponderante de que se ha cometido un delito y del nexo entre este hecho y la propiedad confiscada. (35) No obstante, esto no quiere decir que no hay un vínculo entre el proceso civil de confiscación y la causa criminal. (36) Por el contrario, los elementos mencionados en Del Toro Lugo v. E.L.A., 136 D.P.R. 973 (1994), no tienen el propó-sito de divorciar totalmente al proceso civil de la acción penal. Más bien, establecen los estándares de prueba que tiene que presentar el Estado para satisfacer el procedi-miento in rem ante una impugnación de confiscación.
En Downs v. Porrata, Fiscal, 76 D.P.R. 611, 619 (1954), resolvimos que un indulto total, pleno e incondicional otorgado a un convicto por Ley de Armas de Puerto Rico convertía la propiedad confiscada, automáticamente, en “una propiedad inocente ... que puede revertir a su dueño, puesto que es la culpa del dueño la que la convierte en un instrumento o medio ilícito para la comisión de un delito”. (Enfasis suplido.) En cuanto a los argumentos del Gobierno de que la culpabilidad recaía sobre la cosa, producto de la ficción jurídica creada por el proceso in rem y que el indulto tenía efecto únicamente sobre el convicto y no la propiedad confiscada, concluimos que “[l]a algunas veces útil ficción que la culpabilidad puede recaer sobre la cosa que sirve de instrumento para la comisión de un delito, haciendo abstracción de la voluntad criminal que la dirige, no tiene un valor absoluto .. ,”.(37) De haber aplicado mecánicamente la llamada ficción jurídica del proceso “in rem” y la independencia total entre esta causa y el caso criminal contra el imputado del delito que produjo la confiscación, el indulto contra el convicto no hubiese “liberado” a la cosa, la cual hubiera permanecido confiscada como *670 coautora no indultada del delito. La “ justicia y los dicta-dos de la razón natural’ ” no permitían tal desenlace.(38)
Ésa no ha sido la única vez que resistimos una aplica-ción automática y absoluta de esta ficción jurídica en las confiscaciones in rem. En Ochoteco v. Tribunal Superior, 88 D.P.R. 517 (1963), se confiscó un vehículo por violaciones a la Ley de Armas de Puerto Rico. Las personas imputadas fueron declaradas no culpables porque el registro del vehí-culo fue ilegal. El dueño del vehículo, a quien no se le había señalado conducta criminal alguna, impugnó la confis-cación. Aunque no atendimos directamente el asunto de la absolución de los acusados, manifestamos lo siguiente:
[N]o podemos convenir con la Sala sentenciadora en que si-tuaciones como éstas tienen por única contestación el hecho de que la acción va dirigida a la cosa res, por lo que los derechos de terceros inocentes, ni están envueltos, ni están protegidos. Una generalización así de la norma de derecho aplicable no es en todos los casos procedente. Cada caso debe verse y pesarse a la luz de sus hechos, ya que la naturaleza in rem de la acción no la desviste de su condición esencialmente punitiva y de infligir castigo.(39)
La relación entre el acto delictivo y la propiedad confiscada es de suma importancia ya que, con la excepción de aquellos objetos que son en sí mismos delictivos, como las sustancias controladas, muchas de las propiedades incautadas no son de por sí delictivas. Si esta propiedad útil no tiene conexión con la comisión de un delito y se puede aprovechar para fines lícitos, como es el caso de los vehículos, no hay razón para que el Estado la continúe ocupando.(40) Por eso el Estado tiene la obligación de establecer la conexión entre la propiedad y el delito;(41) de lo *671 contrario, la propiedad mantiene su naturaleza inocente y útil.
D. Como ya hemos visto, la jurisprudencia del Tribunal Supremo de Estados Unidos ha acortado el espacio en-tre las confiscaciones civiles in rem y los procedimientos de tipo criminal. Consciente de la multiplicidad de estatutos de confiscación in rem, tanto federales como estatales, el Tribunal Supremo de Estados Unidos ha elaborado un es-tándar para determinar si en esos casos aplican las garan-tías de los procedimientos criminales. En United States v. One Assortment of 89 Firearms, 465 U.S. 354, 362 (1984), el Tribunal explicó que la controversia estriba en si el pro-ceso de confiscación es, por intención estatutaria o por su propia naturaleza, criminal y punitivo, o civil y remedial. Así, al distinguir entre lo criminal y lo civil, el Tribunal Supremo federal equipara lo punitivo con lo criminal y lo civil con lo reparador. Igual ocurrió en Austin v. United States, 509 U.S. 602 (1993), en donde se hizo la distinción entre el elemento de la reparación y el castigo. Como he-mos visto, el objetivo de nuestra Ley Uniforme de Confis-caciones es punitivo, al igual que su naturaleza, y se con-cibe como un castigo adicional por cometer un delito.(42)
En cuanto a la ficción jurídica que permite ir directa-mente contra la propiedad ocupada como si ésta fuese res-ponsable de la conducta delictiva, el Tribunal Supremo federal no ha favorecido su uso desmedido y lo ha avalado, estrictamente, cuando se trata de derrotar la acción del dueño inocente para recuperar su propiedad que un tercero ha utilizado indebidamente.(43) En Austin v. United States, supra, el Tribunal Supremo de Estados Unidos vinculó la ficción jurídica del proceso in rem, precisamente, a la ale- *672 gación del dueño como tercero inocente. Sobre eso nos dice el Supremo federal: “[Forfeiture has been justified on two theories —that the property itself is ‘guilty’ of the offense, and that the owner may be held accountable for the wrongs of others to whom he entrusts his property. Both theories rest, at bottom, on the notion that the owner has been negligent in allowing his property to be misused and that he is properly punished for that negligence.” (Enfasis suplido.)(44) En otras palabras, la ficción jurídica subya-cente en el proceso de confiscación in rem se debe utilizar tan sólo para justificar la ocupación de bienes que son pro-piedad de un dueño inocente. No se puede utilizar este recurso ficticio para concluir que puede haber una propie-dad culpable de delito sin que un ser humano, efectiva-mente, haya cometido dicho delito. Por último, la jurispru-dencia federal también ha distinguido entre el bien inherentemente delictivo y aquel que es útil para otros efectos inocentes.(45)
III
Cónsono con nuestras expresiones sobre la necesidad de una interpretación restrictiva de las leyes que autorizan las confiscaciones in rem y con el objetivo punitivo de la Ley Uniforme de Confiscaciones, nuestra jurisprudencia ha reconocido que el desenlace del procedimiento civil está íntimamente relacionado a la causa criminal. Específica-mente, a partir de la figura del impedimento colateral por sentencia, hemos reconocido una serie de eventos en el área criminal que invalidan la confiscación impugnada en el proceso civil in rem.
A. La doctrina de impedimento colateral por sen- *673 tencia, como modalidad de la figura de cosa juzgada, opera cuando un hecho esencial para el pronunciamiento de una sentencia se dilucida y determina mediante sentencia vá-lida y final, y tal determinación es concluyente en un se-gundo pleito entre las mismas partes, aunque estén invo-lucradas causas de acción distintas. (46) Esta doctrina tiene por fundamento tanto la figura de cosa juzgada, recogida en el Artículo 1204 del Código Civil,(47) como la “influencia del derecho anglosajón proveniente de los Estados Unidos”.(48) Por lo tanto, el desarrollo de esta doctrina no ha tenido en nuestra jurisdicción una trayectoria definida, pues en ocasiones se ha tratado como institución indepen-diente, mientras en otras se ha considerado una modalidad de la doctrina de cosa juzgada. (49) En síntesis, “la doctrina de impedimento colateral se distingue de la cosa juzgada en que para aplicar la primera no es necesario que se dé el requisito de identidad de causas necesario para la segunda”.(50)
Hemos resuelto que la doctrina de impedimento colateral por sentencia no aplica de manera automática a procedimientos de impugnación de confiscación relacionados a los mismos hechos de una acción penal previamente adjudicada.(51) No obstante, “[e]n nuestra jurisdicción [l]a *674 absolución en los méritos adjudica con finalidad irreversible el hecho central, tanto del caso criminal como el de confiscación, de que el vehículo no se utilizó para [la comi-sión del delito] ”.(52) Ello, a pesar de la diferencia en el quantum de prueba que se requiere en el caso criminal vis-á-vis la causa civil in rem. Al así resolver, hemos reco-nocido que si no prospera la causa criminal contra la persona imputada, es difícil continuar la confiscación en el área civil, a pesar de que el estándar de preponderancia de la prueba requerido en el proceso civil es sustancialmente menor al de prueba más allá de duda razonable que exige la causa criminal. La sentencia absolutoria en el juicio criminal “ ‘tiene un valor y trascendencia que amparan no sólo la libertad, sino también el derecho de propiedad del absuelto, y que [la propiedad] no es por su naturaleza ins-trumento de crimen y sí un bien mueble destinado al apro-vechamiento por su dueño en actividades lícitas’ ”.(53)
En Del Toro Lugo v. E.L.A., 136 D.P.R. 973 (1994), no se encontró causa para arresto contra la persona imputada del delito que fundamentó la confiscación de un vehículo. El foro de instancia no creyó el testimonio del agente en cuanto a la razonabilidad del registro realizado, por lo cual determinó que éste fue ilegal. En el proceso civil de impug-nación de la confiscación se presentó una copia certificada de la resolución de “no causa” que dictó el tribunal en la causa criminal. El foro de instancia en el caso civil deter-minó que la doctrina de impedimento colateral por senten-cia no aplicaba porque el sobreseimiento de los cargos cri-minales no fue el producto de una determinación sobre los méritos del caso. Resolvimos en ese momento que la regla de exclusión se extendía al proceso civil.(54) Por lo tanto, *675 revocamos la determinación del Tribunal de Primera Ins-tancia que denegó la demanda de impugnación de confiscación.
En Suárez v. E.L.A., 162 D.P.R. 43 (2004), resolvimos que cuando los cargos por el delito que fundamentó la con-fiscación de una propiedad se desestiman por incumpli-miento con los términos de juicio rápido,(55) la demanda de impugnación se debe declarar “con lugar”. Llegamos a esa resolución, no obstante que el ELA aún podía presentar nuevamente los cargos que se desestimaron originalmente, pues la desestimación se había tornado final y firme, y aunque habían pasado más de dos años y medio, el Estado no había presentado nuevamente los cargos. Ante ese esce-nario, es decir, una sentencia desestimatoria firme por un lado y una dejadez del ELA en presentar nuevamente los cargos criminales, declaramos “con lugar” la demanda de impugnación de confiscación.
En Ford Motor v. E.L.A., 174 D.P.R. 735 (2008), resolvi-mos que procedía la devolución del vehículo incautado, dado el archivo de una causa criminal al amparo de la Re-gla 247.1 de Procedimiento Criminal.(56) Tras confrontar la naturaleza rehabilitadora de la citada regla, y la confisca-ción, que “sirve de castigo”(57) determinamos que el archivo y sobreseimiento de la causa criminal, tras la declaración de rehabilitación, constituía una exoneración en los méritos.(58)
*676 A igual conclusión llegamos en Díaz Morales v. Depto. de Justicia, 174 D.P.R. 956 (2008). En este caso, un menor imputado de una falta por sustancias controladas se some-tió a un proceso de desvío que culminó en el archivo defi-nitivo de la querella en su contra. Resolvimos que procedía la devolución de la propiedad confiscada.
De lo anterior se infiere un decidido desarrollo de nues-tra jurisprudencia hacia condicionar el proceso civil de con-fiscación al resultado de la causa criminal contra el ale-gado autor del delito que fundamenta dicha confiscación, incluso en casos donde la absolución en el caso criminal no sea en los méritos. Es decir, no se trata únicamente de la aplicación de la doctrina de impedimento colateral por sen-tencia, sino de excepciones a la independencia del proceso in rem fundadas en la extinción de la acción penal contra la persona presuntamente responsable del delito.
B. La jurisprudencia federal estadounidense contiene algunas instancias donde se condiciona el proceso civil de confiscación al desenlace de la causa criminal. En Plymouth Sedan v. Pennsylvania, supra, el Tribunal Supremo federal aplicó la garantía constitucional contra los regis-tros irrazonables en casos criminales a los procesos de con-fiscación si éstos, aunque se denominen como "civiles”, tie-nen naturaleza punitiva. Al determinarse en el caso criminal que el registro fue ilegal, no se podía sostener la confiscación de la propiedad.
En United States v. One Assortment of 89 Firearms, supra, el Tribunal Supremo de Estados Unidos se enfrentó a la interrogante de si una absolución en el caso criminal conllevaba la devolución de la propiedad incautada que se estaba litigando en el proceso civil. En este caso, el Tribunal consideró que podía continuar el proceso civil de con-fiscación porque éste, según su naturaleza estatutaria, era más de corte civil que criminal. Una conclusión distinta, es decir, que según el estatuto aplicable la confiscación sea *677 más criminal que civil, conllevaría que la absolución en la causa penal resulte en la devolución de la propiedad.(59)
C. La Asamblea Legislativa ha reconocido el vínculo entre la causa criminal contra el presunto autor del delito base y la acción civil de confiscación. De igual forma, la ley vigente coincide con nuestros pronunciamientos en cuanto a la aplicación de la doctrina de impedimento colateral por sentencia que condiciona el proceso civil a la causa criminal. La Ley Número 18 de 1 de enero de 2003 enmendó la Ley Uniforme de Confiscaciones para eliminar un inciso que añadió la Ley Número 32 de 14 de enero de 2000 que disponía que el resultado favorable al acusado no sería impedimento a la acción civil de confiscación. La Ex-posición de Motivos de la Ley Número 18(60) refleja con gran claridad el cambio en el modo de pensar de la Asamblea Legislativa y su decisión de vincular la causa criminal contra el presunto autor del delito con el proceso civil de confiscación. Específicamente, la Asamblea Legislativa manifestó que todo lo plasmado en la Ley Número 32 se hizo “sin tomar en consideración lo resuelto por el Tribunal Supremo” en Carlo v. Srio. de Justicia, y Del Toro Lugo v. E.L.A.(61) Por lo tanto, la Ley Número 18 elimina el inciso que añadió la Ley Número 32 para que la Ley Uniforme de Confiscaciones se “ajuste al ordenamiento jurídico vigente y sobre todo al mandato constitucional”.(62) Al eliminar el inciso añadido al Artículo 2 de la Ley Uniforme de Confiscaciones, supra, 34 L.P.R.A. sec. 1723, la Asamblea Legislativa también expresó que esa enmienda “va en contra de *678 los postulados constitucionales fundamentales en una de-mocracia ... [y] violenta el principio fundamental del pro-ceso de confiscación: el cual es que para que una confisca-ción se pueda sostener le corresponde al ELA demostrar que la propiedad confiscada fue utilizada en una actividad delictiva”.(63)
Las declaraciones de la Asamblea Legislativa, expresa-mente repudiando el objetivo la Ley Número 32 de desvin-cular el proceso civil de confiscación de la acción penal contra el presunto autor del delito base, constituyen la postura legislativa vigente.
IV
En nuestro ordenamiento, solamente las personas naturales o jurídicas pueden cometer un delito.(64) Como se deduce del Artículo 15 del Código Penal de 2004, (65) para determinar que, en efecto, se ha cometido un delito, hace falta una acción u omisión; que dicha acción u omisión viole una ley que lo prohíba u ordene; que se pruebe la ocurrencia de esa acción u omisión, y que ésta conlleve alguna pena o medida de seguridad. En cuanto al elemento subjetivo, hace falta que el acto u omisión se haya llevado a cabo con intención criminal. Solamente se incurrirá en delito mediando negligencia cuando la ley lo disponga expresamente.(66)
Por otra parte, toda persona imputada o acusada de delito se presume inocente hasta que se pruebe su cul- *679 pabilidad más allá de duda razonable en un proceso judicial.(67) Por lo tanto, no se puede determinar con cer-teza jurídica la comisión de un delito hasta que se declare culpable de forma final y firme a una persona.
En cuanto a la muerte de la persona imputada de delito, sabemos que ésta extingue la acción penal.(68) Siendo ello así, a una persona que muere antes de ser imputada, acusada o convicta de delito la cobija la presunción de inocencia. Incluso, en casos de muerte posterior a la convicción y sentencia, pero antes de que ésta se convierta en final y firme por no haber concluido el proceso apelativo, hemos resuelto que “debe ponerse de inmediato punto final al proceso y ordenar retroactivamente el sobreseimiento de las acusaciones”.(69) Esto, pues el fallecimiento del imputado o convicto anula, no sólo el trámite apelativo, sino que pone fin a todos los procedimientos relativos a la acusación desde su origen. (70)
*680 V
El proceso de incautación de propiedades al amparo de la Ley Uniforme de Confiscaciones es civil en su forma pero punitivo en su naturaleza. Su objetivo, claramente identificado por la Asamblea Legislativa, es castigar al de-lincuente con la pérdida de su propiedad, además de la posible pérdida de su libertad. A ello se refiere la Legisla-tura cuando habla del propósito disuasivo de la confiscación.
Al amparo de nuestras interpretaciones constituciona-les, y cónsono con la normativa federal vigente, hemos vin-culado el resultado del proceso civil de confiscación al des-enlace de la causa criminal contra la persona imputada del delito a base del cual se justifica la confiscación. En casos de exoneraciones, hemos ordenado la devolución de la pro-piedad confiscada, incluso en situaciones en las que dichas exoneraciones no adjudicaron los méritos de la acusación. Al proceso civil de confiscación se le ha atribuido la carac-terística de ser in rem aplicando una ficción jurídica que permite ir directamente contra la cosa como si ésta fuese responsable por el delito. Sin embargo, hemos visto que esta ficción jurídica sirve únicamente para derrotar las pretensiones del dueño que, amparándose en la doctrina del tercero inocente, reclama la devolución de su propiedad a pesar de que a ésta, efectivamente, la utilizó otra persona para cometer un delito. En nuestro ordenamiento penal, esta ficción jurídica no convierte la propiedad incau-tada en autora del delito, como tampoco permite que se exonere a la persona acusada pero sí se declare culpable al objeto.
La acción penal, es decir, la posibilidad que tiene el Es-tado para encausar a una persona e imputarle la comisión de un delito, se extingue con la muerte de la persona imputada. Si la persona muere después de la convicción pero antes de que ésta sea final y firme, el archivo del caso *681 tiene efecto retroactivo hasta la presentación de la acusación. Es decir, en ambos supuestos la persona muere cobijada aún por la presunción de inocencia. En estas cir-cunstancias se extingue también la acción confiscatoria. De lo contrario, permitiríamos la confiscación de un bien sin que nadie sea convicto de delito, extendiendo irrazona-blemente la ficción jurídica en la que se funda la acción, al extremo de que una "cosa”, por sí misma, sería culpable de la comisión de un acto delictivo. Nuestro ordenamiento ju-rídico no permite tal incongruencia.
VI
Por las razones expuestas anteriormente, se confirma la Sentencia del Tribunal de Apelaciones, se declara “con lu-gar” la demanda de impugnación de confiscación y se or-dena la devolución del vehículo incautado.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez disintió sin opinión escrita.

 24 L.P.R.A. secs. 2401 y 2404.

 34 L.P.R.A. sec. 1723 et seq.

 33 L.P.R.A. sec. 4725 (Supl. 2005).

 Sentencia del Tribunal de Apelaciones del 21 de agosto de 2009, pág. 4.

 34 L.P.R.A. Ap. II.

 Sentencia del Tribunal de Apelaciones, pág. 7.

 La decisión del Tribunal de Apelaciones fue en votación divida dos a uno. El juez López Feliciano emitió un voto disidente.

 En el caso KLAN0601084, un panel del Tribunal de Apelaciones sostuvo que la muerte del imputado antes de que se celebrara el juicio en su contra no anulaba la confiscación del vehículo que se ocupó. El foro apelativo fundó su decisión en que, dada la naturaleza civil de la confiscación, la ausencia de absolución en los méritos en la causa penal y la independencia entre los dos procedimientos, nada impide del que continúe el proceso confiseatorio. A semejante conclusión se llegó en el caso KLAN0500578.

 34 L.P.R.A. sec. 1723(a); Suárez v. E.L.A., 162 D.P.R. 43, 51 (2004). Esta ley actualizó la Ley Uniforme de Confiscaciones de Vehículos, Bestias y Embarcaciones de 1960 y amplió la autoridad del Pueblo de Puerto Rico para confiscar la propiedad que se utilizara con fines ilegales. Suárez v. E.L.A., supra, pág. 53.

 Art. II, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1. No obstante, está sujeta al mandato constitucional de que nadie será privado de su propiedad sin el debido proceso de ley. íd.; General Motors Acceptance v. Brañuela, 61 D.P.R. 725, 727 (1943).

 Exposición de Motivos de la Ley Núm. 93 de 13 de julio de 1988 (1988 Leyes de Puerto Rico 408, 409).

 íd.

 M.J. Vera Vera, El posterior adquirente de buena fe y la confiscación de vehículos, 68 (Núm. 1) Rev. C. Abo. P.R. 1 (enero-marzo 2007).

 íd., pág. 24.

 Ford Motor v. E.L.A., 174 D.P.R. 735 (2008).

 Centeno Rodríguez v. E.L.A, 170 D.P.R. 907, 913 (2007); Carlo v. Srio. de Justicia, 107 D.P.R. 356, 362 (1978).

 Del Toro Lugo v. E.L.A., 136 D.P.R. 973, 986-987 (1994).

 Downs v. Porrata, Fiscal, 76 D.P.R. 611, 619 (1954).

 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 697 (1965), citando a Boyd v. United States, 116 U.S. 616, 633-634 (1886).

 íd., pág. 700. El razonamiento de este caso se adoptó en E.L.A. v. Tribunal Superior, 94 D.P.R. 717, 721 (1967). En su opinión disidente, el juez Becerra quiso ir más allá y manifestó que desde Plymouth Sedan v. Pennsylvania, supra, “no creo que puedan seguir prevaleciendo aquí aquellos criterios que consideraron la naturaleza de la confiscación como un procedimiento meramente civil dirigido a una cosa. El caso citado afirma claramente la naturaleza criminal de la confiscación y que impone castigo por la comisión de delito”. íd., pág. 724.

 Srio. de Justicia v. Tribunal Superior, 89 D.P.R. 574, 578 (1963).

 En este caso, también hicimos referencia a las garantías de nuestra Cons-titución sobre los mismos asuntos.

 Véanse: General Accident Ins. Co. v. E.L.A., 137 D.P.R. 466 (1994); Del Toro Lugo v. E.L.A., supra, pág. 982; Alvenre Corp. v. Srio. de Justicia, 130 D.P.R. 760 (1992), opinión de conformidad del Juez Asociado Señor Fuster Berlingeri; E.L.A. v. Tribunal Superior, supra, pág. 721; Meléndez v. Tribunal Superior, 90 D.P.R. 656 (1964); Estado Libre Asociado v. Tribl. Superior, 76 D.P.R. 842 (1954); Metro Taxicabs v. Tesorero de P.R., 73 D.P.R. 171 (1952); Sánchez v. Tesorero de P.R., 72 D.P.R. 133, 136 (1951); General Motors Acceptance v. Brañuela, supra.

 Vera Vera, op. cit, pág. 11.

 Citando a I W. Blackstone, Commentaries, Cap. 8, *300.

 “More remarkable, the Government’s complaint charges the money with the commission of an actionable wrong.” (Énfasis en el original.) United States v. U.S. Coin & Currency, 401 U.S. 715, 718 (1970).

 Meléndez v. Tribunal Superior, supra, pág. 675.

 Carlo v. Srio. de Justicia, supra, pág. 362.

 Suárez v. E.L.A., supra, pág. 52.

 íd., pág. 55; Díaz Ramos v. E.L.A. y otros, 174 D.P.R. 194 (2008).

 Centeno Rodríguez v. E.L.A., supra, pág. 913; Del Toro Lugo v. E.L.A., supra, págs. 985 y 988.

 Pueblo v. González Cortés, 95 D.P.R. 164, 168 (1967).

 Del Toro Lugo v. E.L.A., supra, pág. 983.

 Díaz Ramos v. E.L.A. y otros, supra, pág. 10.

 Del Toro v. E.L.A., supra, pág. 983.

 Meléndez v. Tribunal Superior, supra.

 Downs v. Porrata, Fiscal, supra, pág. 618.

 Del Toro Lugo v. E.L.A., supra, pág. 988.

 Ochoteco v. Tribunal Superior, 88 D.P.R. 517, 527-528 (1963).

 Downs v. Porrata, Fiscal, supra, pág. 619.

 Pueblo v. González Cortés, supra.

 Véase, además, U.S. v. Seifuddin, 820 F.2d 1074 (9no Cir. 1987). En Plymouth Sedan v. Pennsylvania, supra, pág. 697, a pesar de que el propio Tribunal Supremo de Pennsylvania había caracterizado el proceso de confiscación como civil, el Tribunal Supremo federal resolvió que aunque tuviera una forma civil, su natura-leza según la ley del estado era penal.

 Austin v. United States, 509 U.S. 602 (1992).

 íd., pág. 615.

 Plymouth Sedan v. Pennsylvania, supra, pág. 700.

 Suárez v. E.L.A., supra, pág. 59, A & P Gen. Contractors v. Asoc. Caná, 110 D.P.R. 753, 763 (1981).

 31 L.P.R.A. sec. 3343.

 A & P Gen. Contractors v. Asoc. Caná, supra, pág. 762.

8) íd., pág. 763.

60) Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212, 221 (1992).

B1) íd. Véase First Bank, Univ. Ins. Co. v. E.L.A., 156 D.P.R. 77, 83 (2002). Hay que señalar que en First Bank uno los pasajeros del vehículo hizo declaración de culpabilidad por posesión de sustancias controladas mientras no se determinó causa probable para arresto contra el poseedor del vehículo. Nuestra negativa a aplicar la doctrina de impedimento colateral por sentencia automáticamente, en ese caso, res-pondía a que la ausencia de causa probable en cuanto al poseedor no impedía la confiscación, pues el pasajero ya se había declarado culpable. Esa declaración de culpabilidad del pasajero permitía que continuara la acción in rem y la determina-ción de “no causa” contra el poseedor no se podía utilizar como impedimento.

 Del Toro Lugo v. E.L.A., supra, pág. 988.

 íd., pág. 989.

 “[RJesolvemos que la determinación final y firme respecto a la exclusión o supresión de una evidencia ilegalmente obtenida, hecha en el procedimiento penal *675 por el delito que da base a la confiscación, constituirá cosa juzgada en su modalidad de impedimento colateral por sentencia, en cuanto a la admisión de dicha evidencia en la acción de impugnación de confiscación, siempre que dicha determinación judicial sea debidamente planteada e introducida en evidencia.” (Énfasis en el original.) Del Toro Lugo v. E.L.A., supra, pág. 997.

 34 L.P.R.A. Ap. II.

 34 L.P.R.A. Ap. II.

 Ford Motor v. E.L.A., supra, pág. 741.

 Id., pág. 15. En particular, manifestamos que “una vez se archiva la denun-cia ... se adjudica de forma favorable al acusado y se dispone con finalidad del hecho central del cual depende la confiscación: la comisión de un acto delictivo”. Díaz Morales v. Depto. de Justicia, 174 D.P.R. 956, 962-963 (2008), en referencia a Ford Motor v. E.L.A., supra.

 Véase, además, U.S. v. $84,740.00 Currency, 981 F.2d 1110 (9no Cir. 1992), en donde se continuó el proceso civil no obstante el desenlace en el caso criminal, porque se entendió que el proceso civil era más reparador que punitivo.

 2003 Leyes de Puerto Rico 64, 64-65.

 “Dicha enmienda [Ley Número 32] vulnera el derecho del acusado a no ser juzgado dos veces por el mismo delito y el derecho a no ser privado de su propiedad sin el debido proceso de ley y previa justa compensación.” íd., pág. 64.

 íd., pág. 65.

 íd.

 “Delito es un acto cometido u omitido en violación de alguna ley que lo prohíbe u ordena, que apareja, al ser probado, alguna pena o medida de seguridad.” Art. 15 del Código Penal de 2004 (33 L.P.R.A. sec. 4643). Las penas consideradas en el Código solamente aplican a personas naturales, 33 L.P.R.A. sec. 4677, o a personas jurídicas, 33 L.P.R.A. sec. 4711.

 33 L.P.R.A. sec. 4643.

 33 L.P.R.A. sec. 4650.

 Art. II, Sec. 11, Const. E.L.A, L.P.R.A, Tomo 1; Pueblo v. Irizarry, 156 D.P.R. 780, 786 (2002).

 97(a) del Código Penal de 2004 (33 L.P.R.A. sec. 4725(a)). Las penas también se extinguen cuando la persona sentenciada fallece. Art. 103(a) del Código Penal de 2004 (33 L.P.R.A. sec. 4731(a)). Véase, además, E.L.A. v. Rodríguez, 163 D.P.R. 825 (2005).

 Pueblo v. Morales Díaz, 120 D.P.R. 249, 251 (1987). “ ‘[T]odo acto íntimo o daño criminal, público, es sepultado con el ofensor.’ ” íd., pág. 253, citando a United States v. Daniel et al., 47 U.S. (6 How.) 11, 13 (1848).

 Algunos tribunales federales de distrito y circuito se han expresado sobre el efecto de la muerte del imputado de delito en el proceso civil de confiscación. Véase United States v. Oberlin, 718 F.2d 894 (9no Cir. 1983), en el que el Tribunal de Apelaciones federal para el Noveno Circuito determinó que procedía el archivo del proceso de confiscación, pues al morir el convicto se extinguieron tanto la causa penal como el procedimiento de confiscación, por ser éste esencialmente de natura-leza penal (“It is a well-settled rule that actions upon penal statutes do not survive the death of the wrongdoer ... [in this case,] while some aspects of the forfeiture may have been remedial, there is no doubt that it was essentially penal”). íd., pág. 896. En United States v. $47,409.00 in United States Currency, 810 F. Supp. 919 (N.D. Oh. 1993), el Tribunal de Distrito federal se enfrentó a la muerte del presunto autor del delito que sirvió de fundamento para confiscar un dinero. El Tribunal resolvió que la determinación de continuar la acción confiseatoria dependía de su naturaleza: “Whether a cause of action survives the death of the alleged wrongdoer hinges upon a determination that the case is remedial or punitive in nature. The former causes survive, the latter do not.” (Énfasis suplido.) íd., pág. 921. Al igual que en United States v. Oberlin, supra, la pregunta medular es si el proceso de confiscación es de naturaleza reparadora o punitiva.